**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| STATE OF CONNECTICUT,<br><br>               Plaintiff,<br><br>   v.<br><br>EIDP, INC.; DUPONT DE NEMOURS, INC.;<br>THE CHEMOURS COMPANY; THE<br>CHEMOURS COMPANY FC, LLC;<br>CORTEVA, INC.; and 3M COMPANY,<br><br>               Defendants. | Case No. 3:24-cv-00239-SRU<br><br><br><br>May 8, 2024 |

**DEFENDANT 3M COMPANY'S MEMORANDUM IN OPPOSITION**
**TO MOTION FOR REMAND TO SUPERIOR COURT AND FOR COSTS AND FEES**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 8

I.     The Court Has Federal Officer Jurisdiction Over The State's Claims. ........................... 9

        A.     Courts Assume The Truth Of Well-Pleaded Factual Allegations In A Notice Of Removal And Liberally Construe Federal-Officer Cases In Favor Of Removal................................................................................................ 10

        B.     The State's Claims Relate To 3M's Acts Under Color Of Federal Office. ......... 12

              1.     3M Plausibly Alleged That PFAS From MilSpec AFFF Use Has Inextricably Commingled With Alleged "Non-AFFF" PFAS Contamination. ....................................................................................... 14

              2.     The State's Disclaimer Of AFFF-Related Relief Does Not Extinguish The Nexus Between This Lawsuit And MilSpec AFFF......... 17

        C.     3M Will Assert A Colorable Federal Government Contractor Defense............. 22

II.     Alternatively, The Court Has Federal Enclave Jurisdiction Over The State's Claims. ............................................................................................................................ 29

III.     The Court Should Deny The State's Motion For Costs And Fees.................................. 31

CONCLUSION.................................................................................................................... 32

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re AFFF Prods. Liab. Litig.*,
    2019 WL 2807266 (D.S.C. May 24, 2019)........................................................13, 29, 30, 31

*In re AFFF Prods. Liab. Litig.*,
    2024 WL 1470056 (D.S.C. Feb. 29, 2024).......................................................................20, 30

*Agyin v. Razman*,
    986 F.3d 168 (2d Cir. 2021)....................................................................................... *passim*

*Akin v. Ashland Chem. Co.*,
    156 F.3d 1030 (10th Cir. 1998) ........................................................................................29

*Ayo v. 3M Co.*,
    2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) ...................................................................13

*Baker v. Atl. Richfield Co.*,
    962 F.3d 937 (7th Cir. 2020) ..................................................................................... *passim*

*Batchelor v. Am. Optical Corp.*,
    185 F. Supp. 3d 1363 (S.D. Fla. 2016) ..............................................................................21

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1988)..........................................................................................9, 22, 27

*Cnty. Bd. of Arlington Cnty. v. Scripts Pharmacy*,
    996 F.3d 243 (4th Cir. 2021) ............................................................................................27

*Connecticut v. Exxon Mobil Corp.*,
    2021 WL 2389739 (D. Conn. June 2, 2021).......................................................................31

*Cuomo v. Crane Co.*,
    771 F.3d 113 (2d Cir. 2014)...............................................................................18, 22, 24, 26

*Curiale v. A Clemente, Inc.*,
    2023 WL 4362722 (D.N.J. July 5, 2023).............................................................................19

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014).................................................................................................11, 22

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)..........................................................................................................21

*Hagen v. Benjamin Foster Co.*,
    739 F. Supp. 2d 770 (E.D. Pa. 2010) .................................................................24

*Hammer v. HHS*,
    905 F.3d 517 (7th Cir. 2018) ...........................................................................27

*Illinois v. City of Milwaukee*,
    406 U.S. 91 (1972) ...........................................................................................12

*Illinois ex rel. Raoul v. 3M Co.*,
    2023 WL 6160610 (C.D. Ill. Sept. 21, 2023) ..........................................20, 23, 32

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008)..........................................................11, 12, 13, 18

*Jefferson Cnty., Ala. v. Acker*,
    527 U.S. 423 (1999)..................................................................................12, 14

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) ...........................................................................26

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006)........................................................................................11

*London v. Polishook*,
    189 F.3d 196 (2d Cir.1999)..............................................................................26

*Machnik v. Buffalo Pumps Inc.*,
    506 F. Supp. 2d 99 (D. Conn. 2007) ................................................................21

*Maguire v. Hughes Aircraft Corp.*,
    912 F.2d 67 (3d Cir. 1990)...............................................................................27

*Maine v. 3M Co.*,
    2023 WL 4758816 (D. Me. July 26, 2023).................................................20, 30

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005)..................................................................................31, 32

*Maryland v. 3M Co.*,
    2024 WL 1152568 (Feb. 12, 2024)............................................................20, 30

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) ............................................................................28

*Minnesota v. Am. Petroleum Inst.*,
    63 F.4th 703 (8th Cir. 2023) ............................................................................12

iii

*Moore v. Elec. Boat Corp.*,
   25 F.4th 30 (1st Cir. 2022) ............................................................................................10, 22

*In re MTBE Prods. Liab. Litig.*,
   488 F.3d 112 (2d Cir. 2007) ....................................................................................................12

*Nessel v. Chemguard, Inc.*,
   2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ................................................................. *passim*

*New Hampshire v. 3M Co.*,
   665 F. Supp. 3d 215 (D.N.H. 2023) .........................................................................................20

*New York v. Trump*,
   2023 WL 4614689 (S.D.N.Y. July 19, 2023) ..........................................................................13

*O'Connell v. Foster Wheeler Energy Corp.*,
   544 F. Supp. 2d 51 (D. Mass. 2008) ........................................................................................21

*People ex rel. Cuomo v. M&E Tech. Servs.*,
   2009 WL 2878451 (N.D.N.Y. Sept. 1, 2009) ..........................................................................12

*Robinson v. Pfizer Inc.*,
   2016 U.S. Dist. LEXIS 57174 (E.D. Mo. Apr. 29, 2016) ........................................................32

*Sinicki v. Gen. Elec. Co.*,
   2005 WL 1592961 (N.D.N.Y. July 7, 2005) ............................................................................29

*State by Tong v. Exxon Mobil Corp.*,
   83 F.4th 122 (2d Cir. 2023) .........................................................................................12, 13, 14

*Watson v. Philip Morris Cos., Inc.*,
   551 U.S. 142 (2007) .....................................................................................................11, 12, 22

*Willingham v. Morgan*,
   395 U.S. 402 (1969) .....................................................................................................11, 22, 23

**Statutes**

28 U.S.C. § 1441 .............................................................................................................................11

28 U.S.C. § 1442 .....................................................................................................................*passim*

28 U.S.C. § 1447 .............................................................................................................................31

**Other Authorities**

14C Charles Alan Wright, et al., *Federal Practice and Procedure* (4th ed. 2023) ..................9, 26

## INTRODUCTION

Plaintiff State of Connecticut ("State") filed this lawsuit against Defendant 3M Company ("3M") and other Defendants in state court to recover for alleged injuries from per- and polyfluororalkyl substances ("PFAS") purportedly contaminating natural resources "throughout Connecticut." 3M removed the case to this Court, and the State now moves to remand the case to state court. The Court should deny the motion to remand because—under well-established, binding standards for pleading jurisdiction that the Supreme Court and the Second Circuit have adopted but the State ignores—this Court has federal officer jurisdiction as well as federal enclave jurisdiction over the State's claims. The State heavily relies on a number of recent, out-of-circuit district-court orders remanding similar PFAS cases, *see* Mem. In Supp. of Mot. to Remand 1-2 & n.1, ECF No. 41-1 ("Mem.")—but none of those orders are binding on this Court and all of them are the subject of pending appeals. Additionally, other courts have reached the opposite conclusion and denied similar motions to remand. 3M respectfully submits that this Court should exercise its independent judgment and conclude that this case is subject to federal jurisdiction.

This Court has federal officer jurisdiction because this case relates to actions that 3M took under color of federal office, and 3M will assert a colorable federal defense in this action. The claimed PFAS contamination at issue in this case stems at least in part from certain PFAS-containing firefighting foams—aqueous film forming foams ("AFFF")—made by 3M for the U.S. military according to exacting military specifications ("MilSpec"). 3M will assert a federal government contractor defense to the State's claims because they relate to MilSpec AFFF. Congress established that federal courts should adjudicate all questions that relate to that defense. And contrary to the State's mistaken contention that the Court should apply a presumption against removal here, the Supreme Court has specifically held that courts must broadly construe the federal

officer removal statute, and that a defendant's notice of removal need contain only plausible factual allegations. Under those standards, 3M has established that this Court has jurisdiction.

Ignoring those standards, the State wrongly argues that this case is unrelated to AFFF because the State has purportedly split its claim for alleged PFAS contamination of the same natural resources from the same PFAS compounds into *two* cases: *this* case—which seeks damages for PFAS from all sources other than AFFF—and a second case that seeks damages solely for PFAS from AFFF. *See* Compl. ¶¶ 1-18, ECF No. 1-1; Notice of Removal Ex. 2 ("AFFF Compl.") ¶¶ 1-15, ECF No. 1-2.[1] The State charges that 3M is "[c]onflating" the two cases, Mem. at 1, but that is untrue. Despite the State's artful pleading, *this* case is still related to MilSpec AFFF and subject to federal officer jurisdiction because the complaint seeks to recover for alleged PFAS from non-AFFF sources impacting natural resources that allegedly also contain PFAS from MilSpec AFFF. The State does not contest that these natural resources contain PFAS from both AFFF and non-AFFF sources. To the contrary, the complaint here seeks damages as to the same natural resources that the State's AFFF complaint alleges to be contaminated from MilSpec AFFF. Thus, this case is related to MilSpec AFFF because, according to the State's own allegations, MilSpec AFFF causally contributed to the claimed PFAS contamination of at-issue natural resources and locations. And 3M will invoke its government contractor defense in seeking to show that the PFAS at issue here derived from MilSpec AFFF. The State purports to disclaim AFFF-related damages in this case, but the State cannot limit 3M's defenses (federal officer removal is not limited by the well-pleaded complaint rule). Moreover, none of the cases cited by the State

---

[1] "Compl." (as opposed to "AFFF Compl.") refers to the complaint in this case. The AFFF case was removed to this Court (*Connecticut v. 3M Co.*, No. 3:24-cv-00234 (D. Conn.)), and then transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to an MDL in the District of South Carolina where it is pending (*Connecticut v. 3M Co.*, No. 2:24-cv-01217 (D.S.C.)).

squarely grappled with the issue that PFAS from both AFFF and non-AFFF sources are indivisibly commingled in the environment—and the one court to do so held that AFFF manufacturers properly removed a case purporting to disclaim damages traceable to MilSpec AFFF.

The Court also has federal enclave jurisdiction. Even if the State's alleged AFFF disclaimer withstood scrutiny, which it does not, 3M properly removed this case because PFAS from *non*-AFFF as well as AFFF sources plausibly were released from military bases in Connecticut that are federal enclaves.

For those reasons, the Court should deny the motion for remand. In any event, the motion for attorneys' fees should be denied because 3M has an objectively reasonable basis for removal.

## BACKGROUND

As the State's memorandum explains, the State split its claims regarding alleged PFAS-related damages to the very same natural resources into two lawsuits, seeking to evade federal jurisdiction for some of its claims. *See* Mem. at 2-3, 9. On January 25, 2024, the State filed two PFAS lawsuits in Connecticut Superior Court—this putative "non-AFFF" case and the State's "AFFF" case. Both cases broadly seek to recover damages due to alleged PFAS contamination of the exact same natural resources, *compare, e.g.*, Compl. ¶¶ 99, 107, *with* AFFF Compl. ¶¶ 143, 160, from some of the exact same PFAS chemicals, including two PFAS chemicals—perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS")—used to manufacture AFFF, *see* Compl. ¶ 34; AFFF Compl. ¶ 59.

This "non-AFFF" PFAS case seeks damages for claimed PFAS contamination of natural resources and properties "throughout Connecticut." *E.g.*, Compl. ¶¶ 92, 93, 100, 111. Even though the complaint seeks recovery for the same PFAS chemicals *used in* AFFF, the complaint purports to disclaim recovery for damages *from* AFFF, a firefighting foam whose use in firefighting and fire-training activities is alleged by the State itself to be a "major source[] of PFAS contamination

in Connecticut." AFFF Compl. ¶ 143.[2] The State purports to address such AFFF-related PFAS contamination "through a separate legal action." Compl. ¶ 18 ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS which the State is addressing through a separate legal action to hold these and other defendants accountable."). Nevertheless, the complaint in this case broadly encompasses claimed PFAS contamination to Connecticut's groundwater, surface waters, and fish and wildlife, *id.* ¶¶ 86-112, and alleges that "PFAS attributable to Defendants' PFAS Products have been found in groundwater, surface waters, sediments, soils, and biota in the State where PFAS Products were used, stored, disposed of, or otherwise discharged," *id.* ¶ 81.

The State's AFFF lawsuit, filed the same day as this case, alleges that "*AFFF-related*" PFAS contamination likewise exists "throughout Connecticut." *E.g.*, AFFF Compl. ¶¶ 151, 152, 162, 176 (emphasis added). The AFFF complaint acknowledges that certain 3M AFFF products were made pursuant to a MilSpec issued by the U.S. Department of Defense, and that AFFF used by the military was required to conform to the MilSpec. *See id.* ¶¶ 96-97. In fact, until recently, the MilSpec required that AFFF used by the military be made using PFAS. *See* Notice of Removal ¶¶ 22-25, ECF No. 1 ("NOR"). The AFFF complaint expressly seeks damages for PFAS releases from the use of AFFF at military facilities in Connecticut, *see* AFFF Compl. ¶¶ 13, 53, 76, including "the Air National Guard installation at Bradley International Airport in Windsor Locks; the Army National Guard installation in Windsor Locks; the Army National Guard installation in Groton; and the Naval Submarine Base New London," *id.* ¶ 125.

---

[2] *See also* U.S. EPA, PFAS National Primary Drinking Water Regulation Rulemaking (Pre-Publication Version) at 4 (Apr. 8, 2024), https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (noting that the sources of PFAS in the environment include "certain types of fire-fighting foams").

On February 21, 2024, 3M (with Defendants Tyco Fire Products LP and Chemguard, Inc.) removed the AFFF case to this Court based on federal officer and federal enclave jurisdiction, alleging that the State had sued the AFFF manufacturers for actions performed under federal authority in making PFAS-containing MilSpec AFFF used at military facilities (including federal enclaves), and that the removing defendants intended to assert a federal government contractor defense. *See* AFFF Notice of Removal ¶¶ 1-4, No. 3:24-cv-00234 (D. Conn.), ECF No. 1. The State did not challenge removal of the AFFF case to this Court. The JPML then transferred that case to the *In re AFFF Products Liability Litigation* multidistrict litigation ("MDL") in the District of South Carolina. JPML Order, No. 3:24-cv-00234 (D. Conn.), ECF No. 20.

On February 22, 2024, 3M removed this "non-AFFF" PFAS action to this Court based on federal officer and federal enclave jurisdiction. *See* NOR ¶¶ 1-5. In removing this case, 3M alleged that, notwithstanding the State's putative disclaimer of AFFF-related relief, this case encompasses PFAS contamination stemming at least in part from MilSpec AFFF, because PFAS from non-AFFF sources are indivisibly commingled "throughout Connecticut" with PFAS from MilSpec AFFF. *See id.* ¶¶ 26-38. 3M further alleged that the State itself, in its AFFF complaint, had alleged MilSpec AFFF-derived PFAS contamination of the *same* natural resources in Connecticut for which the State is seeking recovery in this case based on alleged "non-AFFF" PFAS. *See id.* ¶¶ 28-31. For the numerous reasons explained in 3M's notice of removal (¶¶ 26-38), this case overlaps with the State's AFFF case and encompasses PFAS contamination derived from MilSpec AFFF:

- The State's complaint here seeks recovery for alleged PFAS contamination (including from PFOS and PFOA) of the same natural resources—including drinking water, groundwater, surface waters, soils, sediments, and fish and wildlife throughout

Connecticut—as the AFFF Complaint. *Compare* Compl. ¶¶ 75-112, *with* AFFF Compl. ¶¶ 134-177.

- The State's complaints both allege that PFAS are "highly mobile" in the environment and may "migrate long distances" and "spread through water" to contaminate new natural resources. Complaint ¶ 37; AFFF Complaint ¶ 62. Consistent with those allegations, 3M averred that PFAS from non-AFFF and from MilSpec AFFF sources plausibly were impacting some of the same natural resources in Connecticut. *See* NOR ¶ 34.

- The complaint here specifically alleges injuries from PFAS contamination of the Connecticut River, Farmington River, Naugatuck River, Pequabuck River, Quinnipiac River, and Scantic River, *id.* ¶ 99, and from PFAS-related fish consumption advisories for the Connecticut River, Farmington River, Hockanum River, Housatonic River, Natchaug River, Naugatuck River, Pequabuck River, Quinnipiac River, Scantic River, Shetucket River, Still River, Tankerhoosen River, and Willimantic River, *id.* ¶ 107. The State's AFFF complaint seeks to recover damages for alleged PFAS contamination relating to *those same rivers and fish consumption advisories*, alleging that the PFAS resulted from use, storage, or disposal of *AFFF*. *See* AFFF Compl. ¶¶ 161, 171.

- Two of the military facilities where the State alleges that AFFF was released—the Air and Army National Guard installations at Bradley International Airport in Windsor Locks, *see* AFFF Compl. ¶ 125—are in the vicinity of the Farmington River and the Connecticut River, for which the State seeks recovery for PFAS contamination in *this* case, *see* Compl. ¶¶ 99, 107. According to the State's own allegations, AFFF releases at those military facilities contributed to alleged PFAS contamination of the Farmington River and the Connecticut River: the AFFF complaint expressly attributes PFAS in the Farmington

River to AFFF releases at Bradley International Airport, *see* AFFF Compl. ¶¶ 143, 160, and that is where the Air and Army National Guard bases are located.

- The State's own public documents show that AFFF releases from the Bradley Airport migrated off-site to the Farmington River and then to wastewater treatment facilities in the vicinity, where PFAS indivisibly commingled with the purported "non-AFFF" contamination of the Farmington River and wastewater treatment facilities that is alleged in this case. *See* NOR ¶ 35 (citing Connecticut Department of Energy and Environmental Protection ("CT DEEP"), Power Point, *Introduction to PFAS and Firefighting Foam Release to the Farmington River* at 10-13 (Nov. 1, 2019), https://ceha.wildapricot.org/ resources/Documents/AFFF%20Spills.pdf); *see also* Compl. ¶ 84 (alleging and seeking to recover for PFAS contamination at public wastewater treatment facilities ("POTWs")).

- Similarly, this case seeks to recover for "PFAS contamination of shellfish beds in Long Island sound," Compl. ¶ 108, but the State's AFFF complaint alleges that contamination of shellfish beds in Long Island Sound exists in the vicinity of Groton, *see* AFFF Compl. ¶ 173, which is near two MilSpec AFFF sites: the Army National Guard installation in Groton and the Naval Submarine Base New London, *see id.* ¶ 125.

- The complaint here alleges contamination of public water systems in Connecticut, including at Norwalk, Connecticut. *See* Compl. ¶ 90 ("PFAS attributable to Defendants' PFAS Products have contaminated and injured drinking water that is drawn from groundwater sources in locations throughout the State, including, for example, in public water systems in . . . Norwalk."). But the City of Norwalk filed a lawsuit against 3M and other Defendants to recover for purported contamination of its water supply that the City alleges to have resulted from AFFF use:  the City's complaint repeatedly alleges that AFFF

use at military bases may be responsible for the PFAS. *See* Compl. ¶¶ 2, 64-66, 97, *First Taxing Dist. of City of Norwalk v. 3M Co., et al.*, No. 2:23-cv-02268 (D.S.C.), ECF No. 1.

- In addition, the complaint in this case describes the CT DEEP's ongoing PFAS investigation, *see* Compl. ¶¶ 61-74, and seeks damages for the costs of the investigation, *see id.* at p. 89, including "future costs," *id*. But the State alleges in its AFFF complaint that AFFF use is the cause of at least some of the alleged contamination detected by CT DEEP through that investigation, *see* AFFF Compl. ¶¶ 114-133, and the State is *also* seeking the costs of the *same* investigation in its AFFF complaint, *see id.* at p. 121.

For those reasons, the alleged PFAS contamination for which the State seeks to recover in this case necessarily encompasses, overlaps, and is commingled with PFAS deriving from MilSpec AFFF use. The State's memorandum in support of remand does not—and cannot—contest the extensive overlap between its two complaints, and does not dispute that PFAS from MilSpec AFFF and non-AFFF sources are indivisibly commingled in numerous natural resources and locations in Connecticut.

## ARGUMENT

The Court should deny the motion for remand because 3M's notice of removal more than sufficiently pleads federal officer and federal enclave jurisdiction. The State has not shown that 3M failed to plead either, much less both, bases for jurisdiction. Under the well-established, binding standards specifically applicable to federal officer removal, 3M's plausible allegation that the alleged PFAS contamination in this case is inseparably commingled with PFAS from MilSpec AFFF was a proper basis for 3M to remove this case and assert a colorable government contractor defense, *see Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3-4 (W.D. Mich. Jan. 6, 2021) (denying motion to remand because PFAS-related injuries allegedly resulted from MilSpec AFFF)—indeed, remanding this case based on the State's artful disclaimer of AFFF-related relief

8

(in this case only) would be contrary to the principle that courts liberally construe federal officer jurisdiction in favor of removal. 3M also properly removed this case on the independent ground that *non*-AFFF PFAS at issue here were released at federal enclaves—and the State does not purport to disclaim relief for those releases. At any rate, the Court should deny the State's motion for attorneys' fees.

## I.     The Court Has Federal Officer Jurisdiction Over The State's Claims.

Federal-officer removal jurisdiction exists when (1) the defendant is a "person," (2) the case is "for or relating to" the defendant's action "under color of" federal authority, and (3) the defendant has a colorable federal defense. 28 U.S.C. § 1442(a)(1); *see Agyin v. Razman*, 986 F.3d 168, 174 (2d Cir. 2021) (citing *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014)).

3M meets this standard in spades. Its notice of removal more than sufficiently pleads each element of federal officer jurisdiction: (1) 3M, a corporation, is a person under the statute, *see* NOR ¶ 39; (2) 3M acted under a federal officer in manufacturing AFFF pursuant to a MilSpec issued by the U.S. military that required use of PFAS, *see id.* ¶¶ 40-42, and the State's claims relate to 3M's manufacture of MilSpec AFFF because PFAS from MilSpec AFFF plausibly commingled with and causally contributed to the alleged PFAS contamination of natural resources for which the State seeks damages here, *see id.* ¶¶ 26-38, 43-45; and (3) 3M has a colorable federal government contractor defense because 3M's AFFF conformed to a reasonably precise MilSpec, and the military purchased and used MilSpec AFFF for decades while knowing of the alleged hazards of the PFAS in AFFF, *see id*. ¶¶ 46-54; *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).[3] The State does not contest 3M's allegation that PFAS from MilSpec AFFF (including

---

[3] "Section 1442(a)(1) authorizes removal of the entire [case] even if only one of the controversies it raises involves a federal officer or agency." 14C Charles Alan Wright, et al., *Federal Practice*

PFOA and PFOS) have inextricably commingled with PFAS from non-AFFF sources in many of the very same natural resources and locations in Connecticut at issue in both of the State's cases. Nor does the State dispute that the manufacture of MilSpec AFFF is a proper basis for federal officer removal when the plaintiff seeks to recover for PFAS contamination deriving from MilSpec AFFF.

Instead, the State argues that this Court does not have federal officer jurisdiction because—as a result of the State's disclaimer of any relief related to AFFF in this action—the State's claims are not "for or relating to" 3M's conduct under federal authority, and 3M therefore cannot assert a federal defense. The State is wrong. Federal-officer jurisdiction is liberally construed. *See infra*, Sect. I.A. As a result, this case relates to 3M's manufacture for the federal government of AFFF, which allegedly has cross-contaminated the natural resources and sites at issue in this case—indeed, at trial, a factfinder will have to decide whether any alleged PFAS contamination at issue was caused at least in part by MilSpec AFFF. *See infra*, Sect. I.B. Further, 3M necessarily will assert its government contractor defense whenever it seeks to show that at least some PFAS contamination at issue in this case was caused by MilSpec AFFF. *See infra*, Sect. I.C.

### A. Courts Assume The Truth Of Well-Pleaded Factual Allegations In A Notice Of Removal And Liberally Construe Federal-Officer Cases In Favor Of Removal.

Contrary to the State's assertions, courts must accept as true all well-pleaded factual allegations in a notice of removal and liberally construe federal-officer cases in favor of removal. The State invokes a "presumption against removal," asserting that courts "construe the removal statute narrowly." Mem. 4 (internal quotation marks omitted). But those principles—which derive

---

*and Procedure* § 3726 (4th ed. 2023); *see, e.g.*, *Baker v. Atl. Richfield Co.,* 962 F.3d 937, 945 (7th Cir. 2020); *Moore v. Elec. Boat Corp.,* 25 F.4th 30, 35 (1st Cir. 2022).

from caselaw construing the general removal statute, 28 U.S.C. § 1441—unequivocally do *not* apply to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In fact, the Supreme Court and the Second Circuit have repeatedly pronounced that § 1442(a)(1) "must be *liberally* construed" in favor of removal, *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)) (emphasis added); *see Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008). Additionally, the Supreme Court has concluded that "a defendant's notice of removal need include only a plausible allegation" of each jurisdictional fact. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). As the Second Circuit has recognized, this rule applies in cases removed under § 1442. *See Agyin*, 986 F.3d at 181 ("[T]he same liberal rules employed in testing the sufficiency of a pleading should apply to appraise the sufficiency of a defendant's notice of removal." (internal quotation marks omitted)). The Second Circuit has specifically concluded that courts "must 'credit the defendants' theory of the case' when evaluating the relationship between the defendants' actions and the federal officer." *Id.* at 175 (quoting *Isaacson*, 517 F.3d at 137) (brackets omitted). Judged by that standard, the notice of removal more than sufficiently pleads a basis for removal in this case, as explained below.

The State also invokes the well-pleaded complaint rule, *see* Mem. at 21, but that rule likewise does not apply to federal officer removal, which specifically "allows 'suits against federal officers [to] be removed despite the nonfederal cast of the complaint.'" *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (quoting *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)). Again, it is the removing defendant's theory of the case that matters at this stage—a point the State consistently seeks to elide. "Congress has decided that federal officers . . . require the protection of a federal forum," and that policy "should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Courts apply the same liberal

federal officer removal standard in cases filed by states. *See, e.g., People ex rel. Cuomo v. M&E Tech. Servs.,* 2009 WL 2878451, at *2 (N.D.N.Y. Sept. 1, 2009).[4]

**B.     The State's Claims Relate To 3M's Acts Under Color Of Federal Office.**

3M's notice of removal more than sufficiently alleges that this lawsuit relates to 3M's acts "under color of federal office" because the alleged PFAS contamination derives at least in part from MilSpec AFFF that 3M made for the military. *Agyin*, 986 F.3d at 174. Under the federal officer removal statute, a defendant must plausibly allege that the lawsuit is "for or relating to" its "acti[on] under" a federal officer. 28 U.S.C. § 1442(a)(1). The Supreme Court has explained that "acting under" means that the private party "*assist*[*ed*]*,* or . . . . help[ed] *carry out,* the duties or tasks of the federal superior." *Watson,* 551 U.S. at 152. And the Second Circuit has noted that "for or relating to" requires that the removal notice plausibly allege a "causal nexus" between the defendant's federal act and the plaintiff's allegations. *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 & n.7 (2d Cir. 2023). The "hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[5]

---

[4] Sovereign immunity poses no obstacle to the removal of lawsuits brought by states. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 101 (1972) ("[W]here a State is suing parties who are not other States . . . , those suits may be removed . . . ."); *accord In re MTBE Prods. Liab. Litig.,* 488 F.3d 112, 119 (2d Cir. 2007). The State suggests a need for comity, but Congress specifically determined that federal courts should hear federal-officer cases. Generalized principles of comity cannot trump Congress's express decision.

[5] Establishing that a lawsuit is "for" an act under a federal officer requires showing "a nexus, a causal connection" between the official act and the conduct alleged. *Acker*, 527 U.S. at 431 (internal quotations omitted). In 2011, Congress "lower[ed]" that already-low hurdle, *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023), by amending the federal officer removal statute to permit removal if the defendant plausibly alleges that the case is either "for *or relating to*" an act under a federal officer. 28 U.S.C. § 1442(a)(1) (emphasis added). The legislative history confirms that the amended language "broaden[ed] the universe of acts that enable . . . remov[al] to Federal court," H.R. Rep. No. 112-17, at 6 (2011), and courts of appeals have concluded that the language encompasses cases "not just causally connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Baker*, 962 F.3d at 943; *see Minnesota*, 63 F.4th at 715. The Second Circuit, even before the 2011 amendment, already applied a "quite low"

The fact that 3M acted under a federal officer in manufacturing PFAS-containing MilSpec AFFF is not in dispute, and as the Second Circuit has noted, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from the equipment that it manufactured for the government." *Agyin*, 986 F.3d at 175 (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017)). The State makes no attempt to refute the cases cited in the notice of removal in which courts concluded that AFFF manufacturers had adequately pleaded that they acted under a federal officer in manufacturing MilSpec AFFF for the U.S. military. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019) (holding that AFFF manufacturer "demonstrated that it was manufacturing [MilSpec AFFF] under the U.S. military's guidance"); *Ayo v. 3M Co.,* 2018 WL 4781145, at *8-9 (E.D.N.Y. Sept. 30, 2018) (holding that 3M and other AFFF manufacturers acted under DOD officers in making MilSpec AFFF); NOR ¶ 21. Taking the notice of removal's allegations as true, 3M meets the "acting under" requirement.

The State does, however, dispute that *this case* "relat[es] to" 3M's manufacture of MilSpec AFFF. 28 U.S.C. § 1442(a)(1). The State argues that it has not sued 3M for acts "under color of federal office" because the State purportedly brought this lawsuit to recover only for "non-AFFF" PFAS contamination and disclaimed recovery (in this case only) for AFFF-related contamination. *E.g.*, Mem. at 7-8.

The State's contention that its "non-AFFF" PFAS claims are insufficiently related to 3M's MilSpec AFFF is wrong. This lawsuit is plainly "for or relating to" MilSpec AFFF (28 U.S.C.

---

"causal connection" standard for meeting the statutory requirement. *Isaacson*, 517 F.3d at 137. It has continued to apply that standard after the 2011 amendment. *Tong*, 83 F.4th at 145 & n.7. Courts have questioned whether there is any "practical[]" difference between the Second Circuit's "quite low" requirement and the post-2011-amendment test that other circuits have adopted. *New York v. Trump*, 2023 WL 4614689, at *6 (S.D.N.Y. July 19, 2023).

§ 1442(a)(1))—and has a sufficient "nexus" with MilSpec AFFF (*Tong*, 83 F.4th at 145 n.7). That is because 3M plausibly alleged in the removal notice that the claimed "non-AFFF" PFAS contamination at issue in this lawsuit is inextricably commingled with PFAS from MilSpec AFFF, and under the standard governing federal officer removal, those allegations must be credited at this stage of the litigation. *See Acker*, 527 U.S. at 432. Thus, the challenged conduct (*i.e.*, alleged contamination of natural resources "throughout Connecticut" with PFAS) is sufficiently connected to 3M's actions under color of federal office (*i.e.*, the provision of MilSpec AFFF whose use, storage, or disposal in Connecticut has allegedly released PFAS impacting the exact same natural resources and locations for which the State seeks to recover in this "non-AFFF" action). At a minimum, the factfinder will need to assess the source of the PFAS at issue here and whether it even can be distinguished from PFAS from MilSpec AFFF (which 3M disputes), so necessarily this case is connected to MilSpec AFFF. Although the State contends that it disclaimed AFFF-related relief, a plaintiff may not thwart federal-officer removal through such artful pleading. Crediting 3M's "theory of the case" (*Acker, supra*) puts 3M's manufacture of MilSpec AFFF squarely at issue in this action.

### 1. 3M Plausibly Alleged That PFAS From MilSpec AFFF Use Has Inextricably Commingled With Alleged "Non-AFFF" PFAS Contamination.

The State does not contest that—as 3M plausibly alleged in its notice of removal—PFAS from MilSpec AFFF overlaps and has inextricably commingled with the claimed "non-AFFF" PFAS contamination of natural resources and locations at issue in this lawsuit. *See* NOR ¶¶ 26-38. The State also does not and cannot deny that MilSpec AFFF used at military and other facilities in Connecticut contributed to alleged PFAS contamination. Far from it: the State conceded as much by filing a lawsuit against 3M and others expressly seeking damages for PFAS contamination of natural resources "throughout the State" allegedly caused by AFFF use, including at numerous

military and other facilities. *E.g.*, AFFF Compl. ¶ 13. This "non-AFFF" lawsuit alleges that PFAS contamination derives from the exact same PFAS chemicals, PFOS and PFOA, that are at issue in the State's AFFF lawsuit and historically were used in manufacturing MilSpec AFFF products. *Compare, e.g.*, Compl. ¶ 34, *with* AFFF Compl. ¶ 59. And this "non-AFFF" lawsuit alleges statewide PFAS contamination of the exact same natural resources as the State's AFFF lawsuit, including drinking water, groundwater, surface waters, soil, sediment, and fish and wildlife. *Compare* Compl. ¶¶ 75-112, *with* AFFF Compl. ¶¶ 134-177. In fact, the complaint in this action seeks to recover for PFAS contamination of many of the very same Connecticut rivers and locations of fish consumption advisories that are the subject of the AFFF complaint and allegedly have been contaminated from AFFF use. *Compare* Compl. ¶¶ 99, 107, *with* AFFF Compl. ¶¶ 161, 171. The river bodies expressly put at issue in this action include rivers near military facilities that the State in its AFFF Complaint has expressly identified as sites of AFFF release. For instance, the Connecticut River and the Farmington River—both of them put at issue in this action *and* the AFFF action, *see* Compl. ¶¶ 99, 107; AFFF Compl. ¶¶ 169, 171—are near the Bradley Airport, where the State's AFFF complaint alleges that AFFF was released, *see* AFFF Compl. ¶¶ 143(b), 158-160, and where Air and Army National Guard installations are located, *see id.* ¶ 125. Both of the State's complaints also allege that PFAS move through groundwater, surface water, and soil, so it is more than plausible that PFAS from MilSpec AFFF migrated from military sites to the waterbodies and other natural resources at issue here. *See* Compl. ¶ 37; NOR ¶¶ 34-36.

Given 3M's plausible (and uncontested) allegation that the claimed PFAS contamination in this "non-AFFF" case is indivisibly commingled, and overlaps, with PFAS deriving from MilSpec AFFF, the State's claims in this case have a sufficient nexus with 3M's manufacture of MilSpec AFFF. At a minimum, the factfinder assessing this case will need to address where and

how the military and others used MilSpec AFFF throughout Connecticut; how PFAS from such MilSpec AFFF migrated through groundwater and surface water; and whether the PFAS chemicals allegedly found in natural resources and at contamination sites addressed by this lawsuit are attributable (at least in part) to MilSpec AFFF. Because 3M's theory of this case establishes the need for that complex, fact-intensive inquiry into the causes of the claimed contamination—and to what extent 3M's manufacture of MilSpec AFFF is a cause—3M has pleaded a sufficient connection between the challenged conduct and federal authority, showing that this Court should hear this case. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 & n.3 (7th Cir. 2020); *infra* at 18-19.

Moreover, in spite of the removal notice's well-pleaded allegations to the contrary (which this Court must accept as true), the State makes no attempt to explain, in either its pleadings or its motion to remand, how the PFAS deriving from "non-AFFF" sources allegedly at issue here will be separated out from the PFAS deriving from use of MilSpec AFFF for purposes of litigating this case. It is and likely will remain a disputed issue whether PFAS from "non-AFFF" PFAS sources and PFAS from MilSpec AFFF even *can* be factually distinguished for purposes of assigning any liability to 3M and (if liability is found) potentially ordering remediation of specific sites in *this* case (as opposed to in the AFFF case). At this stage, this Court must credit 3M's plausible allegation that the two are inextricably commingled and cannot be factually distinguished. *See* NOR ¶¶ 36-38, 43-45. Given that, 3M has established a sufficient nexus between the allegations in this complaint and MilSpec AFFF because "[i]t is entirely possible that Plaintiffs' injuries occurred from . . . MilSpec AFFF." *Nessel*, 2021 WL 744683, at *3; *see infra* at 17-18.

**2.      The State's Disclaimer Of AFFF-Related Relief Does Not Extinguish The Nexus Between This Lawsuit And MilSpec AFFF.**

As other courts have concluded, the State's disclaimer of damages from AFFF does not prevent the State's claims from being "for or relating to" MilSpec AFFF. 28 U.S.C. § 1442(a)(1). Most notably, in *Nessel v. Chemguard, Inc.*—a PFAS lawsuit filed by the State of Michigan—the court addressed a similar disclaimer, and concluded that AFFF manufacturers had properly removed the case based on federal officer jurisdiction. There, Michigan had "surgically divide[d]" two complaints "between Commercial [*i.e.* non-MilSpec] and MilSpec AFFF." 2021 WL 744683 at *3.

In *Nessel*, the district court denied Michigan's motion to remand the non-MilSpec AFFF case, even though the complaint in that case disclaimed relief from MilSpec AFFF, and the defendants had removed the case under the federal officer removal statute on the basis that they manufactured MilSpec AFFF. *Id*. The court noted the "substantial similarity" between the two complaints; Michigan's admission in its two complaints that "the chemicals in AFFF get into groundwater and spread contamination throughout the state"; and the fact that Michigan in both cases was seeking recovery for contamination from "the same PFAS compounds." *Id*. at *3. The court explained that the case would entail "a detailed fact-finding process" regarding "whether the injuries from MilSpec and Commercial AFFF can be distinguished." *Id*. Citing Second Circuit law explaining that the "acting under" requirement is a "low" hurdle, *id*. (quoting *Isaacson*, 517 F.3d at 137), the court concluded that Michigan could not deploy the disclaimer to "prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory" of harm, *id*. The court noted that Michigan "argue[s] that the injuries from Commercial AFFF and the injuries from MilSpec AFFF will be distinguishable, but [it] provide[s] no evidence in support of that allegation," and "[t]he substantial similarity between [Michigan's] two complaints belies this

argument." *Id.*; *see id.* ("The Court that ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished: right now, there is not clear evidence either way."). The court observed that "[i]t is entirely possible that Plaintiffs' injuries occurred from . . . MilSpec AFFF," and for that reason, the Court concluded that "Defendants *were at least plausibly* acting under color of federal office" and "*have established the nexus* required by § 1442(a)(1)." *Id.* (emphases added).

As in *Nessel*, this case too is "for or relating to" MilSpec AFFF, 28 U.S.C. § 1442(a)(1)—and it has a "causal connection" to MilSpec AFFF, *Nessel*, 2021 WL 744683 at *3—because as plausibly alleged in 3M's notice of removal, it is "possible that [the State's] injuries occurred from . . . MilSpec AFFF," *id.* at *3. The factfinder will need to determine whether any portion of the alleged contamination throughout Connecticut was caused by MilSpec AFFF (including whether and how the alleged PFAS contamination from "non-AFFF" sources can even be distinguished from PFAS from MilSpec AFFF). Under Second Circuit law, 3M has a right to have those determinations—central to its government contractor defense—made in a federal forum. *See Isaacson*, 517 F.3d at 138 ("[W]hether the challenged act was outside the scope of Defendants' official duties . . . is one for federal—not state—courts to answer."); *Cuomo*, 771 F.3d at 116 (federal-officer "defendant should have the opportunity to present his version of the facts to a federal, not a state, court" (internal quotation marks omitted)).

Other courts—including the Seventh Circuit in *Baker v. Atlantic Richfield Co.*—have likewise rejected similar disclaimers for the same reason: A federal court must decide whether the claimed injuries were caused by a defendant's acts taken under federal authority. In *Baker*, residents alleged that DuPont operated facilities that released lead, arsenic, and other substances that contaminated the soil around the residents' housing complex. 962 F.3d at 939-941. DuPont

removed the case to federal court, alleging that its "manufacture of Freon-12" under the direction of the government "resulted in" some of the alleged soil contamination. *Id*. at 941. Although the residents' complaint allegedly disclaimed damages from Freon-12, *see id.* at 941, 945 n.3, the Seventh Circuit upheld removal, explaining that "a federal court should be the one to resolve" the "difficult causation question" of whether the contamination arose in part "from products DuPont manufactured for the government," *id*. at 945 n.3. "Although the Residents purport to disclaim that their lawsuit is about DuPont's manufacture of Freon-12," the Seventh Circuit explained, the notice of removal plausibly alleged that DuPont's "Freon-12 production resulted in waste streams" that contaminated the soil around the housing complex. *Id*. at 945 n.3. The Court concluded, citing Second Circuit case law, that the case related to DuPont's actions under color of federal authority. *Id.* at 944-945 (citing *Isaacson*, 517 F.3d at 137-138). As *Baker* put it, whether DuPont's "Freon-12 production resulted in the waste streams" at issue was a "difficult *causation* question that a federal court should . . . resolve." *Id*. at 944, 945 n.3 (emphasis added). 3M here plausibly alleged that, notwithstanding the putative disclaimer, the alleged PFAS impacting at-issue natural resources stems in part from MilSpec AFFF, and the State will not be able to differentiate PFAS by source. A federal court should resolve that "difficult causation question." *Id*.; *accord Curiale v. A Clemente, Inc.*, 2023 WL 4362722, at *6 (D.N.J. July 5, 2023) (denying remand motion and holding that chemical manufacturer was "entitled to put forward an alternate theory of causation . . . by asserting that the injuries" "resulted from activity . . . engaged in at the federal government's instruction").

The State's cited authorities are not persuasive and are contrary to the "broad construction" afforded the federal officer removal statute under Second Circuit law. *Agyin*, 986 F.3d at 175. The State primarily relies on a number of district-court orders remanding "non-AFFF" PFAS cases

based on disclaimers similar to the one here. 3M has appealed each of those remand orders. *See* Mem. at 2 n.1. And (as 3M has argued on appeal) *none* of those orders addresses the controlling question of whether 3M has the right to a federal forum for the complex factfinding needed to determine whether alleged PFAS contamination of any particular natural resource or location was caused at least in part by MilSpec AFFF—complex factfinding that determines whether 3M can assert a federal defense in these cases. In *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215 (D.N.H. 2023), the court failed to grapple with that issue, *see id.* at 226-229. The other orders contained even less analysis of that issue and largely parroted *New Hampshire*. *See Maine v. 3M Co.*, 2023 WL 4758816, at *10 (D. Me. July 26, 2023); *Illinois ex rel. Raoul v. 3M Co.*, 2023 WL 6160610, at *5-6 (C.D. Ill. Sept. 21, 2023); *Maryland v. 3M Co.*, 2024 WL 1152568 (Feb. 12, 2024), at *3; *In re AFFF Prods. Liab. Litig.*, 2024 WL 1470056, at *2-3 (D.S.C. Feb. 29, 2024).

The State also argues that *Nessel* is distinguishable because the complaint there (unlike the complaint here) alleged claims for contamination from so-called "commercial" AFFF, and purported to disavow only claims based on MilSpec AFFF (as opposed to the State's putative disclaimer here of claims related to any AFFF). *See* Mem. at 13. That is a distinction without a difference, because only a connection with *MilSpec* AFFF can support federal officer jurisdiction: the allegations in *Nessel* relating to commercial, *non*-MilSpec AFFF did not provide any basis for federal officer jurisdiction, and the AFFF manufacturers relied only on the putatively disclaimed *MilSpec* AFFF to remove the case. For the purpose of assessing whether 3M is entitled to remove this "non-AFFF" case to federal court, the disclaimers are functionally equivalent. Michigan (like the State here) purported to disclaim damages for PFAS from a source that would provide the basis for federal officer jurisdiction, yet the court concluded that federal officer removal nonetheless was proper because of complex causation questions. *See Nessel*, 2021 WL 744683 at *3.

The State's reliance on several non-PFAS cases is no more persuasive. *See* Mem. at 9. In each of those cases, plaintiffs sued asbestos manufacturers in a single action for alleged injuries from asbestos exposure, and disclaimed damages from exposure at military sites or during their military careers. Those courts remanded the cases upon concluding that the disclaimers defeated federal officer jurisdiction. The State does not disclose that district courts have split on this question, with some reaching the opposite result—including one case in which a district judge of this Court concluded that very similar "artful pleading around any federal claims cannot defeat federal subject matter jurisdiction." *See Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007); *accord O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008).

Regardless, this case is distinguishable because, in reality, the State has *not* disclaimed relief for harms from AFFF *at all*: instead, it is trying to have its cake and eat it too, splitting its claims to try to avoid federal jurisdiction over its "non-AFFF" case while simultaneously litigating the same claims for AFFF PFAS contamination related to the very same natural resources and many of the very same locations in its other lawsuit pending in the AFFF MDL. *See Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1363 (S.D. Fla. 2016) (cited by Mem. at 9) ("numerous courts . . . have found that disclaimers did not defeat removal where the disclaimer . . . disavowed claims based on a defendant's acts or omissions carried out under federal office, but the plaintiff, nonetheless, sought to recover based on defendant's official acts"); *accord, e.g.*, *Machnik*, 506 F. Supp. 2d at 103 n.1. The State's alleged disclaimer of AFFF-related damages in this case, made while pursuing such damages elsewhere, does not bar federal officer removal of this case. *Cf. Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (courts "will not permit plaintiff to use artful pleading to close off a defendant's right to a federal forum").

In any event, the State's alleged disclaimer of damages caused by AFFF does not change the fact that this case is causally related to MilSpec AFFF because, to determine whether PFAS contamination at particular sites or natural resources falls within the scope of the disclaimer, it will be necessary to evaluate whether any portion of the alleged PFAS is, or is not, attributable to MilSpec AFFF and/or to other PFAS sources. Because 3M is entitled to have that determination made in federal court, 3M's plausible allegation that the claimed non-AFFF PFAS contamination was actually caused at least in part by MilSpec AFFF-related PFAS establishes a sufficient nexus with MilSpec AFFF under the well-established, binding pleadings standards articulated by the U.S. Supreme Court and the Second Circuit. *See Dart Cherokee*, 574 U.S. at 89 ("notice of removal need include only . . . plausible allegations"); *Watson,* 551 U.S. at 147 (federal officer removal statute "must be liberally construed"); *see also Agyin*, 986 F.3d at 175, 180-181.

### C.     3M Will Assert A Colorable Federal Government Contractor Defense.

3M also more than adequately pleaded a colorable federal defense. For purposes of federal officer removal, a defendant need only plead a "colorable" defense, because a defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409)). A federal defense is colorable unless it is "immaterial" or "wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37.

3M's notice of removal more than adequately pleaded the federal government contractor defense recognized by the Supreme Court in *Boyle v. United Techs. Corp.* Under *Boyle*, a defendant is not liable for allegedly defective products "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known

to the supplier but not to the United States." 487 U.S. at 512. 3M pleaded the first and second elements by averring that the U.S. military issued a MilSpec for AFFF and the military continued purchasing 3M's MilSpec AFFF products for decades upon finding that those products conformed to the MilSpec's requirements. *See* NOR ¶¶ 49-50. 3M pleaded the third element by plausibly alleging that the government knew of the alleged dangers of the PFAS in AFFF. *See id.* ¶ 51. The State does not contest the adequacy of 3M's assertion that it has a colorable government contractor defense to PFAS claims related to MilSpec AFFF. *See Nessel*, 2021 WL 744683, at *4 (holding that AFFF manufacturers asserted a colorable government contractor defense). Indeed, the State did not contest removal of its "AFFF" case based on 3M's assertion of that defense.

Instead, the State simply repeats its arguments about the disclaimer, asserting that 3M therefore does not have a "colorable" government contractor defense. *See* Mem. at 11-16. According to the State, if it fails to prove that its injuries were caused by PFAS from non-AFFF sources, the State simply will not recover damages for that AFFF-related part of the alleged contamination, so 3M will never have occasion to assert the government contractor defense in connection with MilSpec AFFF claims. *Id.* The State relies on the remand orders discussed above, which noted that 3M could not assert a colorable federal defense to states' "non-AFFF" claims because of their putative disclaimers. *See, e.g.*, *Illinois*, 2023 WL 6160610, at *5-6.

For many of the same reasons that the disclaimer does not eliminate a sufficient nexus with MilSpec AFFF, the disclaimer also does not defeat 3M's federal defense. As explained above, 3M will nonetheless assert the government contractor defense in contesting liability and causation. It also may raise the defense to limit any damages awarded in this case. Under Supreme Court and Second Circuit law, *regardless* of whether the jury ultimately finds in 3M's favor based on its defense, 3M is entitled to a federal forum to adjudicate the defense. *See Willingham*, 395 U.S. at

409; *Cuomo*, 771 F.3d at 116; *see also Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, 783-784 (E.D. Pa. 2010) ("[Courts] determin[ing] whether Defendants have a colorable claim that the government contractor defense shields them from liability . . . view[] the facts in the light most favorable to Defendants, and do[] not address the merits of the defense."). That law contradicts the State's contention that commingling of PFAS from MilSpec AFFF sources in natural resources and locations at issue here merely raises "evidentiary questions for determining the extent of injury" *rather* than "a federal defense." Mem. at 2.

  ***Establishing causation.*** Because the alleged PFAS contamination for which the State seeks to recover in this case plausibly derives at least in part from MilSpec AFFF, *see supra* at 14-16, 3M will be able to raise the federal government contractor defense *throughout* the litigation. Specifically, 3M will assert its federal government contractor defense *every time* it seeks to show that any alleged PFAS contamination was caused, at least in part, by MilSpec AFFF sources. The notice of removal explained that 3M has a defense to the State's claims because PFAS from MilSpec AFFF plausibly migrated from military facilities, inextricably commingled with PFAS from other sources, and contaminated the State's natural resources at issue here. *See, e.g.*, NOR ¶¶ 1-4. At trial 3M must establish those facts to rebut the State's contention that PFAS came entirely from a non-AFFF source, and in doing so, 3M will be asserting its federal defense. 3M is entitled to put on its own evidence in a federal forum explaining how MilSpec AFFF could have reached the contamination sites at issue, defeating the basis for liability that the State seeks to impose on 3M.

  Consider a scenario where the State presents evidence of PFAS contamination of one of the Connecticut rivers put at issue by the complaint in this case. Compl. ¶ 99. The State's affirmative case during direct examination may appear to establish that the PFAS in the river came

from a non-AFFF source. On cross-examination, however, 3M may elicit testimony showing that at least some of the PFAS came from MilSpec AFFF. Additionally, 3M may present affirmative evidence during its case-in-chief—including the State's own admissions in its AFFF complaint— further supporting the assertion that some or all of the PFAS came from MilSpec AFFF. Each time 3M elicits evidence to support its assertion that MilSpec AFFF caused or contributed to the river's PFAS levels—or to challenge the State's assertion that PFAS in the river is separable and can be distinguished from PFAS derived from MilSpec AFFF—3M necessarily will be presenting the government contractor defense, because presenting evidence about the cause of a plaintiff's injury is part and parcel of asserting a federal government contractor defense. The State cannot artfully tailor its pleading to "prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory" of the State's claimed harm. *Nessel*, 2021 WL 744683, at \*1, \*3. And precisely because the State has tried to split its claims between non-AFFF and AFFF actions, the factfinder will have to determine the source of any PFAS at issue, and whether it derives from a non-AFFF source as opposed to MilSpec AFFF. As a result, the potential applicability and scope of 3M's government contractor defense relating to MilSpec AFFF necessarily will be litigated in this case.

Further, whether or not the sources of the claimed PFAS contamination in Connecticut can even be distinguished based on the available science and evidence is an issue relating to the merits of the parties' claims and defenses. There likely will be a fact dispute in this case over the complex causal question of whether the claimed PFAS contamination can be proven to derive from non-AFFF sources (as opposed to MilSpec AFFF). And even if the State could prove the source of PFAS contamination (despite the lack of any evidence to that effect), determining the proportion

that came from non-AFFF, MilSpec AFFF, and commercial AFFF sources would implicate 3M's government contractor defense.

As a result, the State cannot show that 3M's jurisdictional allegations regarding the applicability of its federal defense are insufficient at the removal stage. "[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns v. United States,* 585 F.3d 187, 193 (4th Cir. 2009) (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946)); *see* 5B *Federal Practice and Procedure* § 1350. The Second Circuit has endorsed that principle. *See London v. Polishook*, 189 F.3d 196, 198-199 (2d Cir.1999). The principle applies here because federal officer jurisdiction (or lack thereof) depends on the merits issue of whether PFAS from AFFF and non-AFFF sources can be distinguished. Thus, the Court should exercise jurisdiction and resolve that merits issue. Second Circuit law safeguards 3M's entitlement to litigate the complex fact and expert issues related to the applicability and scope of its defense in federal court. *See Cuomo*, 771 F.3d at 116 ("To the extent that Cuomo's competing testimony challenges the accuracy and reliability of Crane's evidence, it does not undercut Crane's right to removal, but rather raises the very type of factual dispute about the validity of the defense that should be submitted to the judgment of a federal court."); *see also Baker*, 962 F.3d at 944 ("[Residents] have raised serious questions about whether the Companies' pollution . . . flowed from the Companies' specific wartime production for the federal government. . . . But those are *merits questions* that a federal court should decide.").

**Opposing recovery at locations with multiple PFAS sources.** 3M also may raise its government contractor defense to limit a damages award. Consider, in particular, the scenario in which the factfinder cannot determine how much PFAS contamination of a particular site or

natural resource was from non-AFFF sources and how much was from MilSpec AFFF. To the extent that the State will seek to hold 3M liable for all remediation costs for that site or natural resource, 3M would be entitled to assert its government-contractor defense to argue that state remedy rules cannot be applied to hold 3M responsible for any harm attributable to MilSpec AFFF. Moreover, as already noted, the State has offered no evidence that PFAS contamination from AFFF and non-AFFF sources actually will be distinguishable. *Cf. Nessel*, 2021 WL 744683, at *3. If, following discovery, the factfinder is unable to determine the extent to which the PFAS contamination of a given natural resource or site came from MilSpec AFFF and the State nonetheless pursues damages for PFAS contamination of that resource or site, 3M will assert its government contractor defense in response.

The government contractor defense exists, the Supreme Court has explained, because in "areas . . . involving uniquely federal interests," state law is "pre-empted and replaced." *Boyle*, 487 U.S. at 504 (quotation marks omitted). The defense disrupts normal state-law liability rules when "a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law." *Id.* at 507 (quotation marks omitted); *see Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 70 (3d Cir. 1990) (If "a significant conflict is found to exist" between state tort law and federal interests, "state tort law is pre-empted and the government contractor defense as defined by federal law will apply."). The court hearing this case thus may have to decide whether the state rules conflict with federal interests that the government contractor defense protects.

A federal court should be the one to resolve that question. Congress decided "as a policy matter . . . that [a] federal defense should be decided in federal court" when it is asserted by a defendant who acted under a federal officer. *Hammer v. HHS*, 905 F.3d 517, 532-33 (7th Cir. 2018). That is so even when the federal defense applies only to a portion of the liability at issue.

*See, e.g.*, *Cnty. Bd. of Arlington Cnty. v. Scripts Pharmacy*, 996 F.3d 243, 252 n.8 (4th Cir. 2021) (holding federal officer removal appropriate even though only 8% of the alleged conduct was performed under a federal officer). If the State seeks to hold 3M liable for the entire cost of remediating a site or natural resource where PFAS from non-AFFF and MilSpec AFFF sources are commingled and indistinguishable, a federal court should decide whether the State's liability scheme would create a significant conflict with the federal interests animating the defense.

It is unclear whether the State intended to concede in its briefing that it *cannot* recover in this case unless it proves that PFAS from AFFF and non-AFFF sources can be distinguished and that the claimed damages here derive from "exclusively those PFAS unrelated to AFFF." Mem. at 15. But even if the State intended such a concession (and the Court credited it), it would not deprive the Court of jurisdiction. To the contrary, as explained above, 3M will assert its federal defense in challenging the State's causation evidence, entitling 3M to a federal forum.

\* \* \* \* \*

For the reasons above, the Court has federal officer jurisdiction over the State's claims notwithstanding the State's putative disclaimer of AFFF-related relief. The State's own AFFF complaint alleges that PFAS from MilSpec AFFF has contaminated natural resources and properties throughout Connecticut—including many of the same natural resources and locations that the State itself alleges in this case are contaminated with PFAS from non-AFFF sources. Particularly when the State has not explained how it will be able to distinguish between PFAS from AFFF sources and PFAS from non-AFFF sources, 3M is entitled to assert (and the Court must credit) the theory that the claimed contamination derives at least in part from MilSpec AFFF and is subject to 3M's government contractor defense. The Court should not endorse the State's

argument that by splitting its claim between two duplicative lawsuits, the State may deprive the federal courts of jurisdiction to hear parts of those claims and 3M's federal defense to them.

## II.     Alternatively, The Court Has Federal Enclave Jurisdiction Over The State's Claims.

3M also properly removed this case because the State's claims arise partly from PFAS releases on federal enclaves located in Connecticut. *See* NOR ¶¶ 56-61. "[F]ederal courts have federal-question jurisdiction over tort claims that arise on 'federal enclaves.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 218 (4th Cir. 2022); *accord Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *3-4; *Sinicki v. Gen. Elec. Co.,* 2005 WL 1592961, at *3 (N.D.N.Y. July 7, 2005) ("[F]ederal enclave jurisdiction is . . . a subset of federal question jurisdiction under 28 U.S.C. § 1331" (citing *Ivy Broadcasting Co. v. Am. Tel. & Tel. Co.,* 391 F.2d 486, 492 (2d Cir. 1968)).

The State does not deny that some military facilities in Connecticut were federal enclaves at relevant times, including the Naval Submarine Base New London. *See* NOR ¶ 59 (citing *Chalet Navy Props. Ltd. P'ship*, 23 Conn. L. Rptr. 39, 1998 WL 727771, at *1 (Conn. Super. Ct. Oct. 6, 1998)). The State argues that its complaint in *this* case does not reference any federal enclave, *see* Mem. at 17, but that misses the point. The complaint in this case encompasses alleged PFAS contamination "throughout" Connecticut. *E.g.*, Compl. ¶¶ 79, 89-90, 100-101, 298. Therefore, to the extent that the State's claims encompass releases of "AFFF and/or other PFAS or other PFAS-containing products" from any federal enclave, NOR ¶ 61, the Court must (in addition to federal officer jurisdiction) exercise federal enclave jurisdiction over the State's claims. In fact, the State's memorandum *admits* that 3M's notice of removal offered at least "one plausible example" of alleged PFAS contamination emanating from a federal enclave. Mem. at 19. At this stage, the Court must credit that example from the notice of removal as true.

The notice of removal specifically alleges—and cites evidence showing—that *non*-AFFF PFAS was used at military facilities in Connecticut in applications such as metal plating, and that PFAS contamination attributable to metal plating has been detected at the Naval Submarine Base in New London, a federal enclave. *See* NOR ¶ 60 (citing, *inter alia*, Naval Facilities Engineering Command, Final PFAS Assessment, Naval Submarine Base New London (March 2020), at 27, *available at* https://semspub.epa.gov/work/01/100021732.pdf ("PFAS used in mist suppressants have been linked to metal plating operations. . . . Based on suspected historical plating operations, further PFAS assessment is recommended for Building 40.")). So the State cannot argue that its putative AFFF disclaimer bars federal enclave jurisdiction, because the disclaimer does not purport to exclude from the scope of this litigation any claims for *non*-AFFF PFAS contamination (such as from PFAS-containing mist suppressants used in metal plating) at or emanating from federal enclaves. To the contrary, the complaint's allegations encompass any injuries and damages from PFAS used in industrial processes such as metal plating.[6]

The State erroneously contends that the Court cannot exercise federal enclave jurisdiction here over claims for either AFFF or non-AFFF PFAS releases at or from federal enclaves because federal enclave jurisdiction requires that all pertinent events must have occurred on the federal enclave. *See* Mem. at 18-20. But the Court does have jurisdiction over the State's claims to the extent that they arose on federal enclaves, so the Court can exercise supplemental jurisdiction over

---

[6] That is why the State's reliance on *Maine*, *Maryland*, and *South Carolina* is misplaced. *See* Mem. at 19. Those courts assumed that the state's disclaimer of AFFF-related damages obviated federal enclave jurisdiction. *See Maine*, 2023 WL 4758816, at *10 ("[T]he State has disclaimed any AFFF claims, including those arising from a federal enclave, so the argument circles back to the State's disclaimer."); *Maryland*, 2024 WL 1152568, at *4 (same); *In re AFFF Prods. Liab. Litig.*, 2024 WL 1470056, at *3 ("South Carolina's disclaimer of AFFF claims . . . is a compelling reason to decline supplemental jurisdiction"). Those courts failed to squarely address 3M's argument that the states' disclaimers had no bearing on the existence of federal enclave jurisdiction because the courts did not address *non-AFFF* contamination at the federal enclaves in question.

the rest of the State's case. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *3-4. Thus, in a PFAS case brought by New York, the court held that because it had federal enclave jurisdiction over New York's claims for contamination from AFFF use at a single federal enclave, it could exercise supplemental jurisdiction over New York's claims for contamination at numerous other sites throughout the state. *See id.* (citing 28 U.S.C. § 1367). This Court can and should do the same here. The State is wrong that there needs to be a "'more substantive and explicit'" connection to a specific federal enclave. *Id.* at 18 (quoting *Connecticut v. Exxon Mobil Corp.*, 2021 WL 2389739, at *13 n.13 (D. Conn. June 2, 2021)). There are clear ties to federal enclaves in this case, and this Court should therefore exercise jurisdiction over the entire case.

## III.     The Court Should Deny The State's Motion For Costs And Fees.

Because 3M properly removed this case based on federal officer and federal enclave jurisdiction, the Court should deny the State's request under 28 U.S.C. § 1447(c) for attorneys' fees (*see* Mem. at 20-22) along with its motion to remand. But even if the Court were to grant the motion to remand, it should deny the State's request for attorneys' fees. "[C]ourts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for seeking removal," and "when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

The State mistakenly argues that 3M did not have an objectively reasonable basis for removing this case because a number of district courts issued remand orders rejecting 3M's arguments for federal officer and federal enclave jurisdiction over similar "non-AFFF" PFAS cases. *See* Mem. at 21-22. None of those orders was issued by a court in the Second Circuit, and each of them currently is on appeal. Further, 3M's notice of removal relied on case law upholding federal officer removal in other cases in which plaintiffs, like the State here, purported to disclaim relief for federally-directed acts. *See Baker*, 962 F.3d at 945 & n.3; *Nessel*, 2021 WL 744683, at

*3; *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *3-4. As the State's own cited authorities show, the fact that 3M's arguments for removal have been rejected by district courts in other circuits is not a basis for awarding attorneys' fees, especially when 3M's appeals of those district-court orders are pending. *See Exxon Mobil Corp.*, 2021 WL 2389739, at *15 (cited by Mem. at 18-20) (denying Connecticut's request for costs and fees because, "[a]lthough it is true that multiple district courts have rejected similar arguments for removal, those courts are located in different circuits, and . . . were not subject to appellate review until recently").[7] In fact, in *Illinois*, even though the district court relied on *New Hampshire* and *Maine* in remanding the case, it denied Illinois's request for attorneys' fees because federal officer removal is to be liberally construed and because 3M has successfully removed other PFAS cases. 2023 WL 6160610, at *7. Because 3M has an objectively reasonable basis for removal based on both federal officer and federal enclave jurisdiction, the Court should deny the State's motion for attorneys' fees. *See Martin*, 546 U.S. at 141.

## CONCLUSION

The Court should deny the Motion for Remand to Superior Court and for Costs and Fees.

---

[7] By contrast, in *Robinson v. Pfizer Inc.*, 2016 U.S. Dist. LEXIS 57174 (E.D. Mo. Apr. 29, 2016) (cited by Mem. at 21), where the court did award attorneys' fees, the court cited its own "repeated admonishments and remands to state court for six years," including nine decisions in which "this defendant has been informed by this Court under substantially similar circumstances" that its basis for removal was improper under "controlling Eighth Circuit law," and "at least twenty-five other cases [in which] this Court has remanded for lack of subject matter jurisdiction when other defendants have attempted to remove matters to federal court asserting substantially similar arguments." *Id*. at *11-12. Those are plainly not the circumstances here.

Respectfully submitted,

*/s/ James I. Glasser*
James I. Glasser (ct07221)
Kevin M. Smith (ct24774)
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400
jglasser@wiggin.com
ksmith@wiggin.com

*Counsel for Defendant 3M Company*

33