UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT,<br><br>                          Plaintiff,<br><br>         v.<br><br>EIDP, INC.; DUPONT DE NEMOURS, INC.;<br>THE CHEMOURS COMPANY;<br>THE CHEMOURS COMPANY FC, LLC;<br>CORTEVA, INC.; and 3M COMPANY,<br><br>                          Defendants. | Case No. 3:24-cv-00239-SRU<br><br><br><br><br><br><br><br>May 29, 2024 |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**MOTION FOR REMAND TO SUPERIOR COURT AND FOR COSTS AND FEES**

       The State of Connecticut's ("State") Complaint disclaims "any relief for contamination or injury related to [AFFF]." Compl. ¶ 18. Despite that complete and express disclaimer, Defendants' Opposition to the State's Motion ("Opp.") presents a federal officer removal argument that assumes the possible overlap of AFFF and non-AFFF contamination at some Connecticut sites means that somehow this case is actually about AFFF and that differentiating it from other PFAS contamination will require a federal defense. But that cannot be the case. The simple fact is that this Complaint concerns only non-AFFF PFAS, which Defendants do not allege to be related to their work as government contractors. Any argument that the subject PFAS is too commingled or cannot be properly distinguished is not a federal defense, but rather just an ordinary defense that will be litigated in due course. Moreover, the notion that federal jurisdiction is proper because Defendants' contamination has polluted every corner of the State, including federal enclaves, is not supported by black letter law. This Court should therefore remand this case back to state court and award the State attorney fees for Defendants' objectively unreasonable arguments based on conduct explicitly not included in the State's Complaint.

**ARGUMENT**

Defendants have not established the necessary elements for federal officer removal because (I) the State's claims bear no causal connection to any federal authority and (II) Defendants have not identified a "colorable" federal defense that can be raised in this action. The remote connection, if any, between the State's claims and any federal enclaves makes it inappropriate to exercise even supplemental federal enclave jurisdiction. Finally, the State should be awarded attorney fees and costs for Defendants' objectively unreasonable delay.

**I. The State's Complete and Express Disclaimer Severs This Case from MilSpec AFFF.**

Defendants have failed to satisfy the elements of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because they have not established that this case is "for or relating to" any actions taken "under color of" federal authority. To avail itself of federal officer removal, a removing party is required to "(1) show that it is a person within the meaning of the statute who acted under a federal officer, (2) show that it performed the actions for which it is being sued under color of federal office, and (3) raise a colorable federal defense." *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 142-43 (2d Cir. 2023) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008)) (cleaned up).

Under Second Circuit law, lawsuits may only be removed pursuant to the federal officer removal statute when there is a "causal connection between the charged conduct and asserted official authority," meaning the defendant performed the challenged conduct at the direction of the government. *Connecticut*, 83 F.4th at 144 (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018) (internal citations omitted); *see also Agyin v. Razmzan*, 986 F.3d 168, 179 (2d Cir. 2021) (finding removal to be appropriate when federal regulations directed the defendant to perform the challenged conduct). Defendants bear the burden of proving "that the acts for

which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137 (emphasis in original). The State has brought the instant action to address the environmental and public health consequences of Defendants' *non-AFFF PFAS*; the State's express disclaimer against recovering for AFFF ensures that the actions for which Defendants are being sued are those related only to their provision of non-military PFAS products for commercial and industrial purposes. Defendants have yet to suggest that the commercial and industrial PFAS products at issue in this case have a causal connection to federal authority. That should end the matter.

Instead, Defendants insist this case is truly about MilSpec AFFF and dismiss the State's disclaimer against AFFF recovery as simple "artful pleading." Opp. at 21. Defendants do not substantively subject the State's express disclaimer to scrutiny and only point to the State's entirely separate lawsuit in the District of South Carolina as evidence that it "is trying to have its cake and eat it too." *Id. Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358 (S.D. Fla. 2016), relied upon by Defendants, is instructive on the flaws of their artful pleading characterization. Artful pleading disclaimers, the *Batchelor* court explained, involve "boilerplate language" purporting to "waive *all* federal claims" and incomplete disclaimers where a plaintiff purportedly "disavowed" claims based on "acts or omissions carried out under color of office," but where the plaintiff still seeks to recover "based on a defendant's official acts." *Id.* at 1363 (emphasis in original); *see, e.g.*, *Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 607-08 (D. Conn. 2008) (finding that the plaintiff's disclaimer did not prevent removal where the disclaimer purported to waive all federal claims, "including any claim arising from an act or omission . . . of any federal officer of the U.S. or any agency or person acting under him occurring under color of such office," yet the plaintiffs still sought "to hold [the defendant] liable for the asbestos

exposure traceable to [the plaintiff's] work for the Navy"). Courts deny remand in such cases because remand would "defeat the purpose [of] § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government." *Batchelor*, 185 F. Supp. 3d at 1363 (citation omitted; alteration in original).

Defendants attempt to paint the State's disclaimer as artful pleading with comparisons to two easily distinguishable cases with incomplete disclaimers and, although already addressed in the State's Memorandum, continue to rely heavily on *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 U.S. Dist. LEXIS 39175 (W.D. Mich. Jan. 6, 2021). Opp. at 17-20. *Nessel* concerned only an incomplete disclaimer that disclaimed MilSpec AFFF, but still sought recovery from a questionably distinguishable related product, which Defendants refer to as "so-called 'commercial' AFFF." *Id.* at 20. With the incomplete *Nessel* disclaimer, the factfinder would still need to determine whether the commercial AFFF was produced under a military specification and could potentially confer government contractor immunity. *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 228-29 (D.N.H. 2023). Likewise, Defendants rely upon *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), which also demonstrates an incomplete disclaimer. In *Baker*, the plaintiffs sought recovery for soil contamination at a single site that occurred through "most of the twentieth century." *Id.* at 939. The plaintiffs sued multiple defendants who manufactured products for the government during World War II, but disclaimed relief with respect to only one such product, manufactured by one defendant. *Id.* at 945 n.3. For other defendants, plaintiffs argued "that the Companies had only acted under color of federal office for a small part of the alleged time period at issue." *Id.* at 941. Concluding that defendants' "wartime production was a small, yet *significant*, portion of their relevant conduct," the court denied remand. *Id.* at 945 (emphasis in original).

4

Incomplete disclaimers, like those in *Nessel* and *Baker*, do not defeat removal under § 1442(a)(1), because they still require the court to determine the scope of the defendant's official acts. Alternatively, "'federal courts have consistently granted motions to remand' based on a plaintiff 'expressly disclaim[ing] the claims upon which federal officer removal was based.'" *Batchelor*, 185 F. Supp. 3d at 1363 (quoting *Dougherty v. A.O. Smith Corp.*, No. 13-1972-SLR-SRF, 2014 U.S. Dist. LEXIS 96290, at *36 (D. Del. July 16, 2014)) (listing cases) (alteration in original). The State's case is similar to those of New Hampshire, Maine, Maryland, Illinois, and South Carolina where the suits involve commercial and industrial PFAS products – which the Defendants have not plead bear a causal connection to federal authority – and where a complete AFFF waiver enables non-federal actions to be clearly distinguished from federal actions.[1] Defendants can point to no case similarly situated where the court did not remand the matter. The challenged conduct in the State's Complaint bears no causal connection to federal authority or, as a result of the State's disclaimer, to Defendants' AFFF products.

**II. The State's Express Disclaimer Renders the Federal Contractor Defense Not Colorable.**

Defendants have not asserted a colorable federal defense. A federal defense is colorable unless it is "'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020)). Defendants do not dispute that their government contractor defense is inapplicable to the non-AFFF products truly at issue in this case. As for its application to MilSpec AFFF, the AFFF MDL court has correctly observed that "the [AFFF] disclaimers moot 3M's government contractor defense because,

---

[1] *See New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 229 (D. N.H. 2023) (barring federal officer removal when plaintiff expressly disclaimed claims related to federal activity); *Maine v. 3M Co.*, No. 2:23-cv-210-JAW, 2023 U.S. Dist. LEXIS 128740, at *28 (D. Me. 2023) (same); *Illinois ex rel. Raoul v. 3M Co.*, No. 4:22-cv-4075, 2023 U.S. Dist. LEXIS 168231, at *19 (C.D. Ill. 2023) (same); *Maryland v. 3M Co.*, No. RDB-23-1836, 2024 U.S. Dist. LEXIS 48428, at *9 (D. Md. 2024) (same); *South Carolina v. 3M Co.*, No. 2:23-cv-05979-RMG, at *5 (D.S.C. Feb. 29, 2024) (same).

whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF." *South Carolina*, No. 2:23-cv-05979-RMG (D.S.C. Feb. 29, 2024), at *5. The government contractor defense is not applicable to the State's claims and cannot be raised in this matter, therefore that defense is, by definition, "immaterial" and arguably "wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37.

Federal officer removal exists to ensure that a federal court resolves a federal defense; it does not exist to ensure that a federal court conducts the injury causation analysis. While the federal officer removal statute may be liberally construed by courts, "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). A defense cannot be asserted simply to create jurisdiction. *Moore*, 25 F.4th at 37. Courts may not need to adjudicate the merits of the raised defense to uphold removal, but they do need to consider whether such a defense is possibly meritorious or "colorable." *See Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010) (finding defendants' defense to be colorable "because Defendants would prevail on their defense at trial if the facts raised were proven.").

As the State noted in its initial briefing, courts have repeatedly rejected Defendants' proposed government contractor defense where there is no recovery for AFFF:

> [T]here is no scenario under which 3M could be found liable for any damages caused by AFFF. That is, regardless of whether 3M's AFFF conformed to a specification required by the United States military or whether 3M appropriately warned the government about the dangers of PFAS, 3M cannot be liable in this case for contamination resulting from its alleged supply of MilSpec AFFF.

*New Hampshire*, 665 F. Supp. 3d at 227-28. Likewise in this matter, Defendants would not prevail on their defense at trial because they would be asserting a defense against nonexistent claims, meaning that their government contractor defense is not colorable.

Defendants justify their government contractor defense by confusing the assertion of a

factual defense with a federal defense. Defendants have asserted that they will be presenting factual defenses throughout this litigation, which will be functionally asserting the government contractor defense each time they suggest the plausible presence of MilSpec AFFF. Opp. at 25 ("Specifically, 3M will assert its federal government contractor defense *every time* it seeks to show that any alleged PFAS contamination was caused, at least in part, by MilSpec AFFF sources.") (emphasis in original). Defendants' assertion of that argument, however, is not a federal defense, but rather just a defense that the conduct does not fall within the scope of this complaint. In the absence of liability for AFFF, Defendants have not explained why asserting an alternative causation for PFAS pollution requires a federal forum. Opp. at 10. If the factfinder determines that the PFAS contamination was caused in part by MilSpec AFFF, then the State's recovery will be reduced accordingly, making the identification of MilSpec AFFF no different than any other theory of alternative causation. Therefore, they have not raised a colorable federal defense and cannot avail themselves of federal officer removal.

**III. The State's Claims Predominately Arise Outside of Federal Enclaves.**

Defendants' federal enclave argument lacks merit. Federal enclave jurisdiction is subject to the well-pleaded complaint rule, so federal jurisdiction is appropriate only where the complaint reveals that the claims arose on federal enclaves. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). In the federal enclave context, "[c]ourts presume that federal jurisdiction does not exist over a removed case unless the defendant can affirmatively show otherwise*." New Mexico ex. Rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1146 (D.N.M. 2020). Even where it may be assumed that a federal enclave is implicated in a matter, courts have repeatedly rejected attempts to assert federal enclave jurisdiction where only some of the alleged conduct or injury occurred on a federal enclave. *See, e.g.*, *Connecticut v. Exxon*

*Mobil Corp.*, No. 3:20-cv-1555, 2021 U.S. Dist. LEXIS 111334 at *35 (D. Conn. Jun. 2, 2021) (rejecting interpretation of federal enclave jurisdiction applied to statewide cases "no matter how minor the injuries occurring on federal enclaves in relation to the claims at issue"). Defendants do not argue that all or even most pertinent events occurred on a federal enclave.

Defendants' supplemental jurisdiction argument also fails. Pursuant to 28 U.S.C. § 1367, federal courts with original jurisdiction over claims in a civil action may exercise supplemental jurisdiction over "other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." However, § 1367(c) notes that courts may decline to exercise supplemental jurisdiction where, as here, the supplemental claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction."

In the sole case on which Defendants rely to support their expansive interpretation of federal enclave jurisdiction, the State of New York brought claims concerning MilSpec AFFF products "used by the Air National Guard and the United States Air Force on military bases and at civilian airports." *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (MDL No. 2873), 2019 U.S. Dist. LEXIS 119283, at *2 (D.S.C. May 24, 2019). That case differed substantially from the one before this court and does not support the exercise of supplemental federal jurisdiction. First, the State of New York brought claims to explicitly address AFFF use on certain federal enclaves – such as Griffiss Air Force Base – and other airports and military bases. The AFFF MDL court determined it had federal enclave jurisdiction over AFFF use on federal enclaves and could exercise supplemental jurisdiction over the nearly identical allegations related to AFFF use at other airports named in New York's complaint. *Id.* at *7. In contrast, the State's express disclaimer means this is not an AFFF lawsuit at all and only

8

concerns numerous PFAS products marketed and sold to civilian consumers. *See South Carolina*, No. 2:23-cv-05979-RMG (D.S.C. Feb. 29, 2024), at *6 ("Additionally, the court finds that South Carolina's disclaimer of any AFFF claims, which includes those arising from MilSpec AFFF use and storage on military bases, is a compelling reason to decline supplemental jurisdiction.").

Second, this action differs from New York's because this action does not substantially involve federal enclaves. At most, Defendants have raised only a plausible theory for a potential source of non-AFFF PFAS from a single site they describe as a federal enclave. *See* Notice of Removal ¶ 60. In contrast, the State's Complaint alleges contamination from non-AFFF PFAS throughout Connecticut and specifies locations the State believes to be contaminated with non-AFFF PFAS. *See, e.g.*, Compl. ¶¶ 89-90. Even in the single case relied upon by the Defendants, the court noted that it may decline jurisdiction where the claims arising outside federal enclaves "predominate" over those from federal enclaves. *In re AFFF Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 119283, at *11; *see also* § 1367(c). Indeed, the same court applied this reasoning when it declined to exercise supplemental jurisdiction over the State of South Carolina's claims, where "[a]ssuming that some of South Carolina's claims arose on federal enclaves," such claims are predominated over by the claims from outside federal enclaves. *South Carolina*, No. 2:23-cv-05979-RMG (D.S.C. Feb. 29, 2024), at *6. Any potential contribution of non-AFFF PFAS from a federal enclave is incidental to this action and insufficient to justify supplemental jurisdiction.

**IV. The State Should Be Awarded Attorney Fees for Defendants' Unreasonable Removal.**

Under 28 U.S.C. § 1447(c), a court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of fees is appropriate where the removing party had no objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The district court has discretion to

consider whether the removing party lacked an objectively reasonable basis for seeking removal or whether “unusual circumstances” otherwise warrant such an award. *Id.*

Defendants have no objectively reasonable basis for removing the Complaint. While remand of a timely removed PFAS lawsuit is novel in the Second Circuit, the removal arguments presented by the Defendants have been recently litigated within the Circuit and present no novel issues. *See, e.g., Connecticut*, 2021 U.S. Dist. LEXIS 111334 at *39 (rejecting removal under federal officer removal and federal enclave jurisdiction). Defendant’s Notice of Removal neither acknowledged nor distinguished this case from either recent Second Circuit case law on these issues or from the analogous PFAS cases in district courts around the country. Instead, Defendants have sought to prolong this litigation with arguments that ignore the actual claims brought by the State and largely mirror the same arguments they have brought in other districts. A recent decision from the Southern District of New York characterized a federal enclave argument substantively similar to that presented by Defendants as “objectively absurd.” *City of New York v. Exxon Mobil Corp.*, 21-CV-4807 (VEC), 2024 U.S. Dist. LEXIS 84180 at *29 (S.D.N.Y. May 8, 2024) (awarding costs and fees for, among other arguments, pressing a federal enclave argument that the widespread harms at issue in the case “implicat[e] Defendants’ actions both on and off federal enclaves”). As a result of the unjustified delay from Defendants’ tired and meritless arguments, the State should be awarded attorney fees and costs.

## CONCLUSION

For the reasons discussed above and in the State’s Motion for Remand, removal was improper and lacked any objectively reasonable basis. The State therefore respectfully requests that this Court grant its motion to remand this case to Connecticut Superior Court and award reasonable costs and fees pursuant to 28 U.S.C. § 1447(c).

Respectfully submitted,

PLAINTIFF STATE OF CONNECTICUT

WILLIAM M. TONG
ATTORNEY GENERAL

*/s/ Christopher P. Kelly*

MATTHEW I. LEVINE (ct18898)
Deputy Associate Attorney General
CHRISTOPHER PATRICK KELLY (ct31247)
MICHAEL W. LYNCH (ct29076)
KAELAH M. SMITH (ct30358)
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5250
Fax: (860) 808-5386
matthew.levine@ct.gov
christopher.kelly@ct.gov
michael.w.lynch@ct.gov
kaelah.smith@ct.gov