**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

STATE OF CONNECTICUT,
      Plaintiff,

      v.

EIDP, INC., et al.,
      Defendants.

No. 3:24-cv-239 (SRU)

<u>**ORDER ON MOTION TO REMAND**</u>

The State of Connecticut ("the State") brought this *parens patriae* suit in Connecticut Superior Court against several chemical manufacturers whose activities have allegedly caused widespread environmental contamination across the state. Before the Court now is the State's motion to remand its claims to Connecticut state court. For the reasons set forth below, the State's motion is **granted**.

## I.    Background

On January 25, 2024, the State filed its complaint in state court against EIDP, Inc., DuPont de Nemours, Inc., The Chemours Company, Corteva, Inc., and 3M Company. *See* Compl., Doc. No. 1-1. The State's complaint asserts various claims arising under tort law and state environmental protection statutes related to the defendants' manufacturing of toxic chemicals called per- and polyfluoroalkyl substances ("PFAS"). *Id.* The defendants are "among the world's largest chemical manufacturers and have been the primary historical manufacturers of PFAS and PFAS-containing chemicals and related products since the 1940s." *Id.* at ¶ 2. The State alleges that PFAS contamination has been found in the natural resources, including groundwater, fish and wildlife, and rivers across Connecticut, and has been proven to cause serious harm to human health. *Id.*

On February 22, 2024, 3M filed a notice of removal, asserting federal question jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and federal enclave jurisdiction. *See* Notice of Removal, Doc. No. 1. On April 8, 2024, the State moved to remand the case on the ground that federal jurisdiction is lacking. *See* Doc. No. 41.

3M's theory supporting removal depends on the relationship between this case and another brought by the State against the same defendants for PFAS contamination caused by aqueous film-forming foam ("AFFF") that the defendants designed, produced, and sold to the U.S. military in accordance with military specifications ("MilSpec"). *See* Notice of Removal, Doc. No. 1, at ¶¶ 1-2 (citing *State of Connecticut v. 3M Co., et al.,* No. 3:24-cv-00234 (D. Conn.) ("AFFF Case")); Notice of Removal Ex. 2, Doc. No. 1-2 ("AFFF Compl."). That case was transferred to an MDL panel in South Carolina. *See* Conditional Transfer Order, AFFF Case, Doc. No. 20. In this case, the State is only suing the defendants for harms caused by "PFAS Products [that] have been used in Connecticut and throughout the country in industrial processes and in consumer products," and disclaims relief for "contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS which the State is addressing through a separate legal action." Compl., Doc. No. 1-1, at ¶¶ 3, 18. Nonetheless, 3M explains that federal jurisdiction exists because it will assert a federal government contractor defense to PFAS contamination that resulted at least in part from MilSpec AFFF. Notice of Removal, Doc. No. 1, at ¶¶ 2-3. Moreover, 3M argues that removal is proper because PFAS from AFFF and non-AFFF products were released from at least one military facility in Connecticut that is a federal enclave. *Id.* at ¶ 5.

Of note, several other states have brought similar PFAS claims against 3M and other defendants, and have also split their claims into suits related to MilSpec AFFF and suits related

to non-AFFF PFAS products. In at least five of the non-AFFF cases brought by other states, 3M has sought to remove the cases to federal court based on the same relationship to MilSpec AFFF, and each federal court has remanded the non-AFFF complaint. *See New Hampshire v. 3M Company*, 665 F. Supp. 3d 215 (2023); *Illinois ex rel. Raoul v. 3M Company*, 693 F. Supp. 3d 948 (2023);[1] *Maine v. 3M Co.*, 2023 WL 4758816 (D. Me. July 26, 2023); *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2024 WL 1470056 (D.S.C. Feb. 29, 2024); and *Maryland v. 3M Co.*, 2024 WL 1152568 (D. Md. Feb. 12, 2024).

3M opposes the State's motion to remand. *See* Doc. No. 42. The remaining defendants also filed a joint opposition, incorporating the arguments made by 3M in favor of removal. *See* Doc. No. 43.

## II.    Standard of Review

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Whether a civil action may be removed from state court turns on whether "the district court has original jurisdiction," *Aetna Health v. Kirshner*, 415 F. Supp. 2d 109, 112 (D. Conn. 2006), as determined "by looking to the complaint as it existed at the time the petition for removal was filed," *Moscovitch v. Danbury Hosp.*, 25 F. Supp. 2d 74, 79 (D. Conn. 1998).

---

[1] As of the date of this decision, *Raoul* is the only district court remand order in which an appeal has been decided, though others have been filed. *See People ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024). On appeal, the Seventh Circuit affirmed the district court's remand, holding that 3M did not have a colorable federal defense sufficient to create federal officer removal jurisdiction, on the basis of the State of Illinois' concession at oral argument that it would not seek relief for mixed PFAS contamination. *See id.* at 849. *See also infra* Section III(A) (discussing the impact of the Seventh Circuit's decision in *Raoul* on this case).

"The burden of establishing the existence of federal subject matter jurisdiction rests on the removing party." *Kirshner*, 415 F. Supp. at 112. "If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 8 (1983). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d. Cir. 2013) (citations omitted).

On a motion to remand, the Court accepts as true the allegations in the complaint. *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) (citing *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 318 (S.D. Miss. 2003)).

### III.    Discussion

#### A.    Federal Officer Removal

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), allows for removal of a civil action by "any officer (or any person acting under that officer) of the United States or of any agency thereof" who is sued "for or relating to any act under color of such office." When a private party, who is not themselves a federal officer, seeks to remove a case under section 1442(a)(1), they must show: (1) "that they are 'persons' within the meaning of the statute who 'acted under a federal officer,'" (2) "that they performed the actions for which they are being sued 'under color of federal office,'' and (3) that they "raise a colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (quoting *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)). The Second Circuit has noted that the first and second prongs

of the *Isaacson* test "tend to collapse into a single requirement: *that the acts that form the basis for the state civil . . . suit* were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 143 (2d Cir. 2023) (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)) (emphasis in original). That test has been described as a "causal-nexus" requirement. *See, e.g., id.* at 145 n.7. *See also Jefferson County*, 527 U.S. at 431 ("To satisfy the [acting under color of office] requirement, the officer must show a nexus, a 'causal connection' between the charged conduct and asserted official authority."). In other words, the defendant must have performed the actions for which it is being sued at the direction of the government. *See State by Tong,* 83 F.4th at 144 ("The 'acting under the color of federal authority' requirement is distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage—there must be a causal connection between the charged conduct and asserted official authority.'") (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)).

Finally, regarding the third prong of the *Isaacson* test, the Supreme Court has been clear that the requirement of a "colorable" federal defense does not mean one that is "clearly sustainable"—an "officer need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). The federal defense that 3M asserts is the federal government contractor defense, which provides that "liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were

known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

Unlike the general removal provision, which is strictly construed in favor of remand, section 1442(a)(1) is broadly construed in favor of removal. *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142, 147-48 (2007). *See also Isaacson*, 517 F.3d at 136 ("The words 'acting under' are to be interpreted broadly, and the statute as a whole must be liberally construed."). The federal officer removal statute is also an exception to the well-pleaded complaint rule, because federal jurisdiction need not appear on the face of the complaint, but rather "the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 430–31 (1999).

The State argues that the requirements for federal officer removal are not satisfied because 3M "bases its entire federal officer argument on a product that is not at issue in this litigation." *See* Mot. to Remand, Doc. No. 41-1, at 7. 3M responds that its removal notice satisfies the test for federal officer removal because this case is connected to 3M's actions under color of federal office, which it describes as "the provision of MilSpec AFFF whose use, storage, or disposal in Connecticut has allegedly released PFAS impacting the exact same natural resources and locations for which the State seeks to recover in this 'non-AFFF' action." *See* Opp'n, Doc. No. 42, at 14. It explains that because PFAS contamination from AFFF is "inextricably commingled" with PFAS contamination from other sources, the factfinder in this case will necessarily need to "assess the source of the PFAS at issue here and whether it even can be distinguished from PFAS from MilSpec AFFF," making the claims in this case "connected to MilSpec AFFF." *Id*. Finally, 3M argues that the State's disclaimer of AFFF-related relief does not destroy 3M's right to remove the case on federal officer grounds. *Id*. at 17.

Regarding the first prong of the test for federal officer removal jurisdiction, there is no dispute that 3M is a "person" within the meaning of the statute and that it that "act[ed] under [a federal] officer" when it privately contracted with the government to develop MilSpec AFFF. *See Agyin v. Razmzan,* 986 F.3d 168 (2d Cir. 2021) (describing the "acting under" requirement of section 1442(a)(1) and explaining that "[t]he Supreme Court has said, for example, that a private company acting pursuant to a contract with the federal government has this relationship."). The question whether federal jurisdiction exists under section 1442(a)(1) comes down to two questions: whether there is a causal nexus between the acts that are the subject of the State's complaint and 3M's federal authority (its production of AFFF for the U.S. military), and whether 3M has raised a "colorable federal defense." *See generally Isaacson*, 517 F.3d 129. Those questions inherently overlap because 3M's alleged federal defense—that it produced MilSpec PFAS in conformity with precise government specification—is relevant only if the Court determines that 3M's liability for production of MilSpec AFFF is at issue in this case. *See* Notice of Removal, Doc. No. 1, at ¶¶ 49-54. *Cf.* Opp'n, Doc. No 42, at 23 ("The State does not contest the adequacy of 3M's assertion that it has a colorable government contractor defense to PFAS claims related to MilSpec AFFF.").

In this case, the "causal nexus" and the "colorable federal defense" prongs of the federal officer removal test are both resolved by the State's disclaimer of any relief stemming from any form of AFFF. *See* Compl., Doc. No. 1-1, at ¶ 18 ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS which the state is addressing through a separate legal action to hold these and other defendants accountable."). That express disclaimer is exactly the type that defeats federal officer removal jurisdiction. As the First Circuit has explained,

> [t]o defeat removal, an express disclaimer must explicitly renounce claims upon which federal officer removal was based. If a plaintiff renounces such claims, then a defendant is not entitled to a federal forum in which to raise a defense arising out of his official duties, because such a defense pertains to claims that simply do not exist.

*Gov't of Puerto Rico v. Express Scripts, Inc*., 119 F.4th 174, 187 (1st Cir. 2024) (cleaned up).

"[C]ourts recognize a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the grounds for removal under Section 1442(a)(1)." *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *10 (D. Del. July 16, 2014). In the former scenario, courts have held disclaimers ineffective to defeat removal where the disclaimer "(1) generally purported to waive all federal claims based on boilerplate language; or (2) disavowed claims based on a defendant's acts or omissions carried out under color of office, but the plaintiff, nonetheless, sought to recover based on a defendant's official acts." *Batchelor v. Am. Optical Corp*., 185 F. Supp. 3d 1358, 1363 (S.D. Fla. 2016) (citing *Siders v. 20th Century Glove Corp. of Texas*, 2016 WL 1733473, at *4 (S.D.W. Va. Apr. 29, 2016) (collecting cases)). In the latter, however, "federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Dougherty*, 2014 WL 3542243, at *10. *See also, e.g., Hayden v. 3M Co*., 2015 WL 4730741, at *4 (E.D. La. Aug. 10, 2015) (remanding asbestos case because plaintiff disclaimed any relief for exposure during Navy service, which was the only ground for federal officer removal, and stating that the disclaimer was "dissimilar from other invalid disclaimers that merely attempted [to] circumvent federal jurisdiction."). Here, the State's disclaimer clearly falls into the latter category, because it specifically and unambiguously disclaims the claims—for PFAS contamination from AFFF—upon which federal officer removal is based.

Moreover, as 3M acknowledges, five other district courts have considered motions to remand similar complaints brought by other states (and all removed by 3M) that also split their

PFAS claims into two suits, one about MilSpec AFFF and one about non-AFFF PFAS. All of those courts have granted motions to remand the non-AFFF PFAS complaints, uniformly holding that the plaintiffs' express disclaimer of any claims related to AFFF destroys any nexus between the claims and the defendants' actions as a military contractor, and renders a federal government contractor defense irrelevant. *See New Hampshire v. 3M Company*, 665 F. Supp. 3d 215 (2023); *Illinois ex rel. Raoul v. 3M Company*, 693 F. Supp. 3d 948 (2023); *Maine v. 3M Co.*, 2023 WL 4758816 (D. Me. July 26, 2023); *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2024 WL 1470056 (D.S.C. Feb. 29, 2024); and *Maryland v. 3M Co.*, 2024 WL 1152568 (D. Md. Feb. 12, 2024). I am convinced by the reasoning of those decisions. As the U.S. District Court for the District of New Hampshire explained, New Hampshire's express disclaimer, which was identical to the disclaimer in this case, effectively defeated the causal nexus required for federal officer removal because "there is no scenario under which 3M could be found liable for any damages caused by AFFF" and therefore "[t]he State's claims are neither 'for'—nor do they 'relate to'— 3M's actions under federal authority." *New Hampshire,* 665 F. Supp. at 227-28.

The State's complete disclaimer of relief from AFFF contamination also means that 3M does not have a colorable federal government contractor defense. Neither party has made any suggestion that the defendants' production of non-AFFF PFAS products was at the direction of the government. Instead, 3M argues that it will raise a government contractor defense by "seek[ing] to show that any alleged PFAS contamination was caused, at least in part, by MilSpec AFFF sources." Opp'n, Doc. No. 42, at 24. 3M goes on to explain that "[e]ach time 3M elicits evidence to support its assertion that MilSpec AFFF caused or contributed to the river's PFAS levels—or to challenge the State's assertion that PFAS in the river is separable and can be distinguished from PFAS derived from MilSpec AFFF—3M necessarily will be presenting the

government contractor defense." *Id.* at 25. Although 3M certainly has a right to present that type of defense to causation at trial, it is incorrect that what it describes is a federal government contractor defense. The government contractor defense shields contractors from liability for design defects in products that conform to government specifications. *See Boyle*, 487 U.S. at 512. The defense 3M intends to assert, by contrast, is merely an ordinary, alternate causation defense—one that happens to involve demonstrating that the alternate cause is a product designed for the U.S. military. *See* Mot. to Remand, Doc. No. 41-1, at 15. In fact, 3M, like any defendant in a case involving allegations of environmental contamination, could defend against the State's claims by demonstrating that the alleged contamination was caused by *any other possible source* of PFAS, not just by its own production of MilSpec AFFF. In fact, in environmental contamination cases, the presence of an alternate source of contamination is common, and does not automatically defeat liability. *See, e.g., Crouzet v. First Baptist Church of Stonington*, 199 Conn. App. 532, 561 (2020) ("The existence of a secondary or additional source of contamination . . . does not mean that the plaintiff has failed to prove that the defendants were also a source of the contamination."). As the U.S. District Court for the District of Maine explained,

> the State has taken upon itself the burden as part of its case to demonstrate that the source of contamination in its Non-AFFF lawsuit is not a AFFF source. If the factfinder concludes that the State has failed to meet its burden concerning the source, 3M will prevail. This effectively means that the federal officer defense will not be applicable in the State's Non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves Non-AFFF sources.

*Maine v. 3M Company*, 2023 WL 4758816, at *10 (2023). The burden the State has taken upon itself to identify site(s) of PFAS contamination whose source can be reliably identified as non-AFFF PFAS may be a high one. The potential difficulty that the State will face when proving its case at trial, however, does not prevent remand.

3M, in contrast, argues that the "commingling" of PFAS contamination from AFFF and non-AFFF sources throughout Connecticut's waterways and other natural resources renders its government contractor defense relevant. *See* Opp'n, Doc. No. 42, at 14-16. It explains that the factfinder in this case will have to engage in a "complex, fact-intensive inquiry into the causes of the claimed contamination" and assess "whether the PFAS chemicals allegedly found in natural resources and at contamination sites addressed by this lawsuit are attributable (at least in part) to MilSpec AFFF." *Id.* at 16. Again, although the State did concede that it seeks relief for sites where PFAS contamination from AFFF and non-AFFF sources may be commingled, the relevance of AFFF to this case does not give rise to a causal nexus with any federal authority, or a colorable federal defense. Presumably, the State will be able to identify some sites within the state where PFAS contamination from non-AFFF sources has not commingled with contamination from AFFF—for example, upstream on the Connecticut River from Bradley International Airport, where AFFF is released. But even if not, the factfinder's ultimate task of determining whether and to what extend the defendants' non-AFFF PFAS production caused contamination at commingled sites still does not give rise to any federal defense in light of the State's broad disclaimer.

3M asserts that the First Circuit's recent decision in *Puerto Rico v. Express Scripts* stands for the proposition that "a plaintiff's 'disclaimer' cannot defeat federal-officer removal where federal and non-federal activities are intertwined," and that "a disclaimer must entirely foreclose the need for any apportionment of federal and nonfederal conduct." *See* Notice of Suppl. Authority, Doc. No. 56, at 2. In that case, the First Circuit explained that "a valid disclaimer must eliminate <u>any</u> basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's

authority." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (emphasis in original). It went on to explain that invalid disclaimers "would 'force federal contractors to prove in state court that they were acting under the direction of the government.'" *Id.* at 187-88 (quoting *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1275 (S.D. Fla. 2008)). 3M draws too broad a conclusion from the First Circuit's description of valid versus invalid disclaimers. Even though federal and non-federal activities are arguably intertwined in this case, because federal and non-federal sources of contamination have commingled in the environment, the court nonetheless will not have to determine, and the federal contractors will not have to prove, *whether* they acted under the direction of the government. That fact is not in dispute. Rather, because the State has disclaimed all relief from *any form* of AFFF, MilSpec or otherwise, the factfinder's inquiry relevant to AFFF will only be whether, and perhaps in what amount, AFFF is present at any claimed site of contamination.

Moreover, the First Circuit's decision to reverse the District Court's remand in *Express Scripts* does not demand a similar result here, because that case can be distinguished factually. In *Express Scripts*, Puerto Rico sued Caremark for inflating insulin prices through rebate negotiations, and the court credited "Caremark's theory of the case that its federal and non-federal work is indivisible based on the way it negotiates rebates for the federal government and private clients simultaneously." *Express Scripts*, 119 F.4th at 194. Essentially, Caremark alleged that it jointly negotiates rebates on behalf of all clients simultaneously, so it was "impossible to sever what the Commonwealth's residents paid between Caremark's negotiations for FEHBA (Federal Employee Health Benefits Act) versus non-FEHBA plans." *Id.* at 183. Therefore, despite Caremark disclaiming "relief relating to any federal program (e.g., Medicaid, Medicare) or any contract related to a federal program," the court held that "the disclaimer did not eliminate

the possibility that the Commonwealth would recover for Caremark's official acts." *Id.* at 181-82, 194. Here, by contrast, the State's disclaimer is not "incomplete," because 3M's production of AFFF and non-AFFF PFAS products is not "indivisible" conduct. The State disclaims any relief from any form of AFFF, making it impossible for the defendants to be held liable for any conduct connected to their production of AFFF at the direction of the U.S. military and thus rendering irrelevant any question about the scope of the defendants' federal authority.

3M relies heavily on two other cases—*Nessel v. Chemguard, Inc.*, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021), and *Baker v. Atl. Richfield Co.,* 962 F.3d 937 (7th Cir. 2020)—for the proposition that the State has made an "incomplete disclaimer" that does not defeat federal officer removal jurisdiction. But those cases can also be distinguished. In *Nessel*, a PFAS lawsuit filed by the State of Michigan, the district court denied the State's motion to remand despite the State's express disclaimer of any relief related to MilSpec AFFF. In that case, however, Michigan *did* seek relief related to commercial, non-MilSpec, AFFF, unlike here, where the State of Connecticut has disclaimed relief for contamination caused by *all* forms of AFFF. *See* Compl., Doc. No. 1-1, at ¶ 18 ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam. . . ."). In *Nessel,* therefore, the claims potentially had a causal nexus to MilSpec AFFF and would potentially give rise to a government contractor defense because the factfinder would have to determine whether any AFFF for which Michigan claimed relief had been developed in accordance with military specifications. *See New Hampshire*, 665 F. Supp. 3d at 228-29 ("In *Nessel,* whether an alternate source of contamination was MilSpec AFFF, as opposed to another version of AFFF, was legally significant because the defendants' liability turned on whether the factfinder concluded that the defendant produced the AFFF for the federal government under a military specification."). *Baker*

is also distinguishable because there the claims were about pollution from chemicals that the

defendant had allegedly manufactured at a refinery that was, for at least some period of time

during World War II, operated at the direction of the government. *Baker,* 962 F.3d at 940-41.

The *Baker* plaintiffs only disclaimed relief from one specific chemical, Freon-12, produced by

the defendant for the government during the relevant period of time. *See id.* at 945 n.3. However,

the plaintiffs claimed that they were harmed by specific toxins, which the defendants explained

are the byproducts of Freon-12. *Id.* Drawing all reasonable inferences in favor of the defendants,

as is required at the removal stage under section 1442(a)(1), the Court thus concluded that

removal was justified because the defendants likely would be able to prove that at least some of

the alleged pollution arose from the defendants' federal acts. *Id.* at 944-45. As the State explains,

"[i]ncomplete disclaimers, like those in *Nessel* and *Baker*, do not defeat removal under

§ 1442(a)(1), because they still require the court to determine the scope of the defendant's

official acts." Reply, Doc. No. 50, at 5.

Finally, in a notice of supplemental authority, doc. no. 52, 3M points to another Seventh

Circuit case, *Raoul*, which is the only one of the five other district court non-AFFF remand

orders on which an appeal has been decided. On appeal, the Seventh Circuit relied heavily on

*Baker*, and affirmed the district court's remand order *only* because the State of Illinois

disclaimed at oral argument all relief related to locations of contamination where AFFF and non-

AFFF PFAS are both found, eliminating the need for the factfinder in that case to "apportion the

contamination" between AFFF and non-AFFF sources. *See People ex rel. Raoul v. 3M Co.*, 111

F.4th 846 (7th Cir. 2024). As 3M points out, the State of Connecticut has not made a similarly

broad disclaimer of relief from any sites where AFFF and non-AFFF PFAS have commingled,

instead stating that "[i]f the factfinder determines that the PFAS contamination was caused in

part by MilSpec AFFF, then the State's recovery will be reduced accordingly." Doc. No. 52, at 2

(quoting Reply, Doc. No. 50, at 7). Discussing *Baker*, the Seventh Circuit explained that if the

State of Illinois had not disclaimed all relief against 3M for "mixed PFAS contamination," and

only disclaimed liability for PFAS contamination "sourced from AFFF," then federal officer

removal jurisdiction would exist because the federal government contractor defense would be

relevant. *See Raoul*, 111 F.4th at 849 ("[T]he parties' dispute over 'whether the plaintiffs' injuries

arose from products the defendants manufactured for the government . . . is just another example

of a difficult causation question that a federal court should be the one to resolve.'") (quoting

*Baker,* 962 F.3d at 945 n.3).

Again, the facts of *Raoul* are distinguishable. In *Raoul*, the State of Illinois' claims

related to non-AFFF PFAS contamination specifically emanating from one site—a single 3M

manufacturing facility along the Mississippi River—that was located only twenty-five miles

upstream from a U.S. Army facility where MilSpec AFFF was used and stored. *See id.* at 847-48.

Here, unlike in *Raoul*, the State's non-AFFF claims are not similarly limited to one identified site

of contamination, and the State therefore may be able to identify sites of contamination more

remote from the five military facilities and four FAA-certified airports it identifies in its AFFF

complaint as being sites where MilSpec AFFF is used. *See* AFFF Compl., at ¶¶ 124-125.

However, to the extent that this case is not properly distinguishable from *Raoul*, I respectfully

disagree with the Seventh Circuit's analysis, which obviously is not binding on this Court.

Regardless of whether the factfinder is asked to assign liability only for PFAS contamination in

areas where it is wholly from non-AFFF sources, or is asked to reduce liability where mixed

AFFF and non-AFFF PFAS contamination is found, the factfinder is required to determine the

source of PFAS contamination. In either scenario, though, 3M cannot be held liable for

contamination from any form of AFFF, including but not limited to MilSpec AFFF, and the court

is therefore not asked to decide the applicability or scope of any federal defense. As the U.S.

District Court for the District of New Hampshire explained,

> [i]f the evidence, for example, shows that AFFF caused any of the damages in this case, the portion attributable to AFFF would be subtracted from any damages awarded the State. And if no apportionment is possible, no damages could be awarded. 3M would prevail without any need to assert a defense premised on its acts under federal authority. To the extent AFFF is relevant, its presence in the contamination could eliminate recovery for the State—regardless of why or for whom 3M made it.

*New Hampshire*, 665 F. Supp. at 228. I therefore remain persuaded that federal officer removal

jurisdiction is lacking.

### B. Federal Enclave Removal

Next, 3M alleges that this Court has federal question jurisdiction over the State's claims,

and 3M thus may remove the case pursuant to section 1441(a), because "the State's claims arose

in part on federal enclaves, such as the Naval Submarine Base New London." *See* Notice of

Removal, Doc. No. 1, at ¶¶ 5, 56-61. In particular, 3M alleges in its notice of removal that the

U.S. military has admitted to using both AFFF and non-AFFF PFAS products, including metal

plating, at its Naval Submarine Base in New London, contributing to the harms from non-AFFF

PFAS contamination that the State complains of. *Id.* at ¶¶ 59-61.

The Constitution grants Congress the power "[t]o exercise exclusive Legislation . . . over

all Places purchased by the Consent of the Legislature of the State in which the Same shall be,

for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S.

Const. art. I, § 8, cl. 17. Because those "federal enclaves" are governed by federal law, claims

that arise there may be removable "as a part of federal question jurisdiction." *Sinicki v. Gen.

Elec. Co.*, 2005 WL 1592961, at *1 (N.D.N.Y. July 7, 2005) (citing *Akin v. Ashland Chem. Co.*,

156 F.3d 1030, 1034 (10th Cir. 1998), and *Mater v. Holly*, 200 F.2d 123, 125 (5th Cir. 1952)).

"Enclave jurisdiction developed from the need to provide a source of law to claims for personal injuries sustained on land that was ceded by one sovereign (*e.g.,* a state) to the exclusive jurisdiction of another sovereign (*e.g.,* the United States)." *Id.* at *3. Finally, "[t]he doctrine of federal enclave jurisdiction generally requires that all pertinent events take place on a federal enclave." *Vermont v. Exxon Mobil Corp.*, 2024 WL 446086, at *9 (D. Vt. Feb. 6, 2024) (quoting *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271-72 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023)).

The State's complaint does not specifically seek relief for contamination on federal enclaves, but does assert that PFAS pollution may be found state-wide. *See* Compl., Doc. No. 1-1, at ¶¶ 81-112. Given the wide geographic scope of the alleged pollution, it seems plausible, as 3M asserts, that some portion of the PFAS pollution in the state can be found on federal enclaves such as the Naval Submarine Base in New London. *See* Notice of Removal, Doc. No. 1, at ¶ 5. According to 3M, this Court has jurisdiction over the State's claims arising on federal enclaves, and should exercise supplemental jurisdiction over the rest of the State's case. *See* Opp'n, Doc. No. 42, at 29-31. Nevertheless, if it turns out widespread PFAS pollution across Connecticut only incidentally affects any federal enclaves within the state, the exercise of federal enclave jurisdiction would be improper. *See Connecticut v. Exxon Mobil Corp.*, 2021 WL 2389739, at *13 (D. Conn. June 2, 2021), *aff'd sub nom. State by Tong v. Exxon Mobil Corp.,* 83 F.4th 122 (2d Cir. 2023) (in a case about state-wide climate impacts of fossil fuels, in which the defendants asserted federal enclave jurisdiction based on the likelihood that federal enclaves within the state were also impacted, explaining that "given that national parks, federal prisons, and military installations are located throughout the country, [defendants'] interpretation of federal enclave jurisdiction would appear to give rise to federal jurisdiction in any case involving injuries that

occur throughout a state, no matter how minor the injuries occurring on federal enclaves are in relation to the claims at issue.").

In any event, at oral argument on the motion to remand, the State disclaimed relief relating to any contamination arising on federal enclaves. *See* Hearing Tr., Doc. No. 59, at 16:10-11. On the basis of that disclaimer, I conclude that the State's claims arise exclusively on non-federal land, and federal enclave jurisdiction thus does not exist. *See Vermont v. Exxon Mobil Corp.,* 2024 WL 446086, at *9 (D. Vt. Feb. 6, 2024) ("Such disclaimers have been held sufficient to deny federal enclave jurisdiction.") (collecting cases).

C.  Attorneys' Fees

Finally, the State requests an award of attorneys' fees and costs incurred as a result of 3M's removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no presumption in favor of awarding attorneys' fees upon remand, *see Martin v. Franklin Cap. Corp.,* 546 U.S. 132, 137 (2005), and a district court has broad discretion to determine whether an award of attorneys' fees is justified. *Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) ("The statute as a whole, particularly the reference that an order remanding the case '*may* require payment' of costs and fees, affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees."). The Supreme Court has said that the "standard for awarding fees should turn on the reasonableness of the removal," and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. Moreover, the Supreme Court instructs district courts to exercise their discretion to award fees in a manner that is "faithful to the

18

purposes of awarding fees under § 1447(c)," which is the deterrence of "removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id*. at 140-41.

The State argues that 3M's removal was objectively unreasonable in light of the State's disclaimer of all claims related to MilSpec AFFF, and because its arguments in favor of removal were already rejected by five other district courts. *See* Mot. to Remand, Doc. No. 41-1, at 20-22. Nonetheless, I do not find 3M's removal to have been objectively unreasonable or motivated by improper purpose. That is particularly true because the Supreme Court has repeatedly instructed that the federal officer removal statute should be "liberally construed." *See Watson v. Philip Morris Companies, Inc*., 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). Mindful of that standard, 3M's assertion of federal officer removal jurisdiction, though ultimately unsuccessful, was objectively reasonable. Some caselaw, especially from the Seventh Circuit, did support 3M's position that the State's disclaimer was insufficient to justify remand, and the Second Circuit has yet rule on the question whether similar disclaimers are effective. *See, e.g.,* Opp'n, Doc. No. 42, at 18-19 (citing *Baker v. Atl. Richfield Co.,* 962 F.3d 937 (7th Cir. 2020)); Notice of Suppl. Authority, Doc. No. 52 (citing *People ex rel. Raoul v. 3M Co*., 111 F.4th 846 (7th Cir. 2024)).

Additionally, the State has not provided any explanation or documentation of the actual expenses it has incurred as a result of 3M's removal. *See Wisconsin v. Hotline Indus., Inc*., 236 F.3d 363, 367 (7th Cir. 2000) ("Unlike the numerous statutes that authorize the recovery of 'reasonable' attorney's fees, § 1447(c) expressly limits fee awards to actual outlays.") (internal citations omitted). I therefore decline to award attorneys' fees and costs to the State.

**IV.    Conclusion**

For the reasons set forth above, the State's motion to remand, doc. no. 41, is **granted**.

The State's request for an award of attorneys' fees and costs incurred as a result of 3M's removal

is **denied**.

The clerk is directed to remand this case to the Connecticut Superior Court, Judicial

District of Hartford.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of December 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
